# EXHIBIT A

1 | **COM**

Robert B. Gerard, Esq. (Nevada State Bar #005323)
Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
GERARD & ASSOCIATES
2840 South Jones Boulevard
Building D, Suite #4
Las Vegas, Nevada 89146
Telephone:    (702) 251-0093
Facsimile:    (702) 251-0094

Kyle Nordrehaug, Esq. (California State Bar #205975)
BLUMENTHAL & NORDREHAUG
2255 Calle Clara
La Jolla, California 92037
Telephone:    (858) 551-1223
Facsimile:    (858) 551-1232

Attorneys for Plaintiffs (Additional Attorneys on Signature Page)

FILED
SEP 22   3 01 PH '08

CLERK OF THE COURT

**EIGHTH JUDICIAL DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| WILLIAM SPRADLIN and SHIRLEY SPRADLIN; EMMA ODUCA; SALLY KIM; ELLIOT SPRUNG and DAVID SPRUNG; TDF PROPERTIES, LLC; and KUNIKO ISHIDA; individually and on behalf of all persons similarly situated;<br><br>Plaintiffs,<br><br>vs.<br><br>TRUMP RUFFIN TOWER I LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.:   A572059<br>X<br>DEPT. NO.:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) VIOLATION OF THE SECURITIES ACT OF 1933 (Section 12(a)(1))<br><br>(2) VIOLATION OF THE SECURITIES ACT OF 1933 (Section 12(a)(2))<br><br>(3)  VIOLATION OF N.R.S. 90.460<br><br>(4)  VIOLATION OF N.R.S. 90.570<br><br>(5)  VIOLATION OF N.R.S. 598, *et seq.*<br><br>(6)  FRAUDULENT MISREPRESENTATION;<br><br>(7)  NEGLIGENT MISREPRESENTATION; |

)   (8) FRAUD IN THE INDUCEMENT;
)
)   (9) FRAUDULENT CONCEALMENT; and,
)
)   (10) VIOLATION OF THE INTERSTATE
)   LAND SALES FULL DISCLOSURE ACT;
)   15 U.S.C. § 1703(a)(2)
)
)   **ARBITRATION EXEMPTION**
)   **CLAIMED:**
)
)   **1. DAMAGES IN EXCESS OF $50,000**
)   **PER PLAINTIFF**
)   **2. ACTION PRESENTS SIGNIFICANT**
)   **ISSUES OF PUBLIC POLICY**
)   **3. CLASS ACTION**
)   **4. ARBITRATION PROVISION**
)   **UNCONSCIONABLE**

## CLASS ACTION COMPLAINT

COMES NOW, Plaintiffs WILLIAM SPRADLIN and SHIRLEY SPRADLIN; EMMA ODUCA; SALLY KIM; ELLIOT SPRUNG and DAVID SPRUNG; and TDF PROPERTIES, LLC, and KUNIKO ISHIDA, who bring this action on behalf of themselves, and on behalf of all similarly situated persons (collectively "Plaintiffs"), against Defendants TRUMP RUFFIN TOWER I, LLC; and DOES 1 through 100, inclusive, (hereinafter collectively referred to as "Defendants"), and allege, based upon information and belief, except where otherwise stated, as follows:

## NATURE OF THE ACTION

1.     The instant Complaint involves a scheme among the Defendants through which Plaintiffs were illegally and fraudulently induced into purchasing the air rights to condominium-hotel room units as investment securities (the "Securities") at the TRUMP INTERNATIONAL HOTEL & TOWER, LAS VEGAS.

2.     The Plaintiffs all made a 20% deposit to acquire interests in the Securities upon closing. Plaintiffs all executed Purchase Agreements contemplating a closing on their unit at a future date for a specific price. The Defendants have not to date registered the certificate of sale of the

-2-

Securities as a security as required by law and claim no exemption therefrom. Plaintiffs, therefore, on behalf of themselves and all others similarly situated seek rescission of their contract to purchase, restitution of their deposited funds and for damages according to proof and as allowed by law. The reasons the air rights to the hotel condominium units are securities are as follows:

    (a)    the value of the units are all dependent upon the success or failure of the TRUMP INTERNATIONAL HOTEL & TOWER LAS VEGAS branded enterprise (hereinafter referred to as "TRUMP LAS VEGAS");

    (b)    Defendants' sales promotions of the investment in the hotel rooms gave rise to a reasonable understanding that a valuable benefit, over and above the entire amount paid for the physical air rights to the hotel rooms, would accrue to the Plaintiffs as a result of the operation of the enterprise as a TRUMP LAS VEGAS branded enterprise pursuant to the Trump Rental Program;

    (c)    the Plaintiffs, executed the Purchase Agreements with the clear intent to join the TRUMP rental program and did not intend to receive the right to exercise any practical or actual control over the managerial decisions of the TRUMP LAS VEGAS hotel enterprise; and,

    (d)    The Plaintiffs made down payments in the TRUMP LAS VEGAS enterprise by making a series of deposits to Defendants representing 20% of the purchase price of each Security with an anticipated future closing.

3.    Defendants used both inside and outside sales teams to sell the Securities.

4.    Central to the Defendants' marketing of the Securities was the representation that the Securities would generate substantial amounts of revenue to the purchaser. Defendants' sales teams induced the sale of the Securities through sales presentations that raised the Plaintiffs' expectations of the economic benefits of the net rental income to be obtained from the Securities branded as Trump International Hotel & Tower Las Vegas hotel rooms through the Trump Rental Program. The sales presentations included discussions that represented, *inter alia,*:

    (a)    a forecast of the anticipated rental rates of the Securities as TRUMP LAS VEGAS

branded rooms;

    (b)    comparisons of the projected net rental income of the Securities branded as TRUMP LAS VEGAS rooms to other similar hotel rental rates in the area;

    (c)    projections of future occupancy rates of the Securities branded as TRUMP LAS VEGAS rooms; and

    (d)    a forecast of the anticipated revenue split from the TRUMP rental program between unit owner and hotel.

The representations made by Defendants were not restricted to mentioning only the availability of a rental program as part of the TRUMP LAS VEGAS enterprise. Rather, Defendants' marketing strategy overtly emphasized the revenue split and the amount of revenue the Plaintiffs would receive from the rental of the Securities, branded as TRUMP LAS VEGAS hotel rooms with the TRUMP LAS VEGAS enterprise and intentionally omitted material facts.

    5.    The portions of Defendants' marketing scheme that emphasized the economic benefit from the rental of the Securities as represented by the TRUMP LAS VEGAS branded hotel rooms as part of the TRUMP LAS VEGAS enterprise went above and beyond simply mentioning that a rental program was offered by the Defendant. These discussions were the centerpiece of the sales presentation and took place as part of the offering and sale. The Plaintiffs' decision to enter into the TRUMP LAS VEGAS branded hotel room rental program was not reached independently of the decision to purchase the Securities as the TRUMP LAS VEGAS branded hotel room rental program was an integral part of the purchase of the Securities as a TRUMP LAS VEGAS branded hotel room as part of the TRUMP LAS VEGAS enterprise and was represented as such by the Defendants.

    6.    In order to purchase the Securities, the Plaintiffs individually entered into investment contracts with the Defendant whereby Plaintiffs paid a series of deposits totaling 20 % of the purchase price, and agreed to pay to Defendants a sum certain for the Securities at a future date, at which point the Securities would be sold to Plaintiffs.

    7.    The amounts Plaintiffs paid for the purchase of their Securities were subjected to the risks of the TRUMP LAS VEGAS enterprise to rent the rooms at a projected rate for projected days

each year. The TRUMP LAS VEGAS enterprise consists of, *inter alia*: (a) the hotel, (b) the rental program, (c) specialty restaurants, (d) the SPA at Trump, (e) health club, (f) outdoor heated pool with sundeck, bar and private cabanas, (g) the other Trump branded amenities such as valet indoor parking, elegant meeting rooms, personal attache service, in-suite chef, 24-hour concierge, 24-hour white-glove doorman, and full business center. The rental program places the Plaintiffs' Securities into the hotel's room inventory to be used as luxury suites by the Defendant. As a result of the rental program, Plaintiffs have no mechanism by which to control the rental process.

8.      At all relevant times, Defendants operated the TRUMP LAS VEGAS enterprise in Nevada and sold the Securities to purchasers in Nevada. All offers to purchase or sell any of the Securities described herein were made in Nevada and the deposits made within one year of the execution of each Purchase Agreement between Plaintiffs and Defendants took place in Las Vegas, Nevada, the deposits have been held in Nevada, governed by Nevada law.

9.      All of the Securities sold to Plaintiffs by Defendants were sold pursuant to substantially the same marketing strategy of raising the potential buyer's expectation of substantial economic benefits from the purchase and ownership of the Securities branded as part of the TRUMP LAS VEGAS enterprise.

10.      In this suit, Plaintiffs seek rescission as well as equitable relief, including declaratory, injunctive, restitutionary and other equitable monetary relief, and damages as set forth more fully below.

11.      As more particularly described herein, the Securities were sold and offered in conjunction with one or more of the following three factors:

    (a)      emphasis on economic benefits to the purchaser to be derived from the managerial efforts of the promoter, or a third party designated or arranged for by the promoter, from rental of the units;

    (b)      the offering of participation in a rental management program; and/or

    (c)      the offering of a rental or similar arrangement whereby the owner must hold his unit

available for rental for any part of the year, must use an exclusive rental agent or is otherwise materially restricted in his occupancy or rental of his unit.

12.     For each and every one of the Plaintiffs, the sales process was comprised of the sale of the Securities coupled with Plaintiffs' future participation in the Defendants' rental program, which constituted a scheme involving the investment of Plaintiffs' money in a common enterprise with profits to come solely from the efforts of others. The Plaintiffs did not consider the purchase of the Securities for anything other than an economic investment. The purchase of the Securities by Plaintiffs was induced by Defendants' promises of economic benefits to be derived solely from the entrepreneurial or managerial efforts of others.

## THE PARTIES

13.     Plaintiffs William Spradlin and Shirley Spradlin, are residents of Nevada and California, respectively, who executed a Purchase Agreement for the future purchase of the SECURITY number 5620 for $625,000, and paid deposits totaling $125,000, representing 20% of the purchase price.

14.     Plaintiffs Elliot Sprung and David Sprung are residents of Florida, who executed a Purchase Agreement for the future purchase of the SECURITY number 2714 for $565,000, and paid deposits totaling $113,000, representing 20% of the purchase price.

15.     Plaintiff Emma Oduca is a resident of California, who executed a Purchase Agreement for the future purchase of the SECURITY number 5520 for $620,000, and paid deposits totaling $124,000, representing 20% of the purchase price.

16.     Plaintiff Sally Kim is a resident of Illinois, who executed a Purchase Agreement for the future purchase of the SECURITY number 1706 for $780,000, and paid deposits totaling $156,000, representing 20% of the purchase price.

17.     Plaintiff TDF Properties, LLC, a Nevada limited liability company, owned by

Bob Kasday, executed a Purchase Agreement for the future purchase of the SECURITY number 3328 for $635,000, and paid deposits totaling $127,000, representing 20% of the purchase price.

18.     Plaintiff Kuniko Ishida, a resident of Nevada, executed a Purchase Agreement for the future purchase of the SECURITY number 4219 for $600,000, and paid deposits totaling $120,000, representing 20% of the purchase price.

19.     Defendant TRUMP RUFFIN TOWER I, LLC did business as the TRUMP INTERNATIONAL HOTEL & TOWER LAS VEGAS and the condominium hotel is currently operated under the same name. Defendant TRUMP RUFFIN TOWER I, LLC is, and at all relevant times mentioned herein was a Delaware limited liability company. At all relevant times, Defendant conducted and conducts substantial business in the State of Nevada and substantially availed and avails itself of the Las Vegas economic market in Nevada.

20.     Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 100, inclusive, and therefore sued these Defendants by fictitious names. Plaintiffs will further amend this Complaint to allege the true names and capacities of these Defendants if and when they are ascertained. Each of these Defendants, sued by the fictitious DOE designation, comprise various persons and/or entities who participated as co-participants, principals and/or agents in the violations alleged herein and performed acts and made statements in furtherance thereof. These co-participants, principals and/or agents were knowing and willful participants in a scheme to promote, market, sell, advertise, or otherwise benefit from the fraudulent sale of the Securities offered by Defendant. When Plaintiffs learn the identities of such persons or entities, Plaintiffs will seek leave to amend this complaint to add them as Defendants.

## JURISDICTION AND VENUE

21.     This court has jurisdiction over this action, and venue is proper in Clark County, Nevada, because the Defendants have at all relevant times maintained their offices in Clark County, Nevada, and committed the wrongful conduct against each Plaintiff named herein and

1   other members of the Class, in Clark County, Nevada.

2       22.     Certain of the claims in this action are being brought under two federal statutes -

3   the Securities Act of 1933 and the Interstate Land Sales Full Disclosure Act. Both statutes have

4   express anti-removal provisions. See 15 U.S.C. §77l(a)(1)(Securities Act of 1933); 15 U.S.C.

5   §1719 (Interstate Land Sales Full Disclosure Act). Accordingly, neither statute can be a basis for

6   removal of this action to federal court.

7

8

9   <center>**THE SCHEME**</center>

10      23.     This action involves a scheme by the Defendants to develop, control and operate a

11  massive hotel project through funds derived from the sale of investment contract Securities to

12  passive public investors and thereby reap enormous profits through the development and

13  operation of the hotel, as well as the satisfaction of the TRUMP LAS VEGAS enterprises' goal

14  of creating a vast hotel and resort complex to provide upscale customers for the hotel, restaurants

15  and other commercial businesses without incurring any cost to own and operate the TRUMP

16  INTERNATIONAL HOTEL & TOWER. In order to avoid disclosing facts that would have

17  exposed the negative aspects of the investment, Defendants intentionally and knowingly

18  disguised their sale of these investment contract Securities as a simple real estate transaction, for

19  the purpose of avoiding the requirement of both state and federal laws and regulations that

20  require (a) honest and complete disclosure to investors; (b) just and honorable conduct by those

21  who sell investments; (c) registration of the securities being sold and the incumbent disclosure

22  involved therewith; as well as (d) the registration and qualification of the entities and individuals

23  selling investment contract Securities.

24

25      24.     As a result of this scheme to cheat and defraud Plaintiffs and similarly situated

26  investors, Defendants were able to collect millions of dollars of deposits and stand to gain

27  millions more if these potential sales are not rescinded. Through this scheme Defendants were

28  able to conceal from their investors the material facts relating to their investments including,

<center>-8-</center>

*inter alia*, the profits Defendants derive from the sales to Plaintiffs; the use of the proceeds of Plaintiffs' investments;  the transactions occurring between Defendants and their confederates in this scheme as they shared and divided their spoils; the true economics of the investments; the reasonable expectation of a return on the investment; the conflicts of interest between the investors and Defendants and their confederates in this scheme; and the nature and level of risks being undertaken by those who purchased these Securities that should have been disclosed.

25.    As part of their  scheme to cheat and defraud, Defendants  made the conscious decision in connection with the development of the TRUMP LAS VEGAS enterprise and the sale and distribution of the investment contract Securities used to finance the venture to conceal the economic realities of the transactions and to design the presentation and documentation of the transactions in such a way as to hide the true nature of the transactions and conceal material facts regarding their ongoing scheme to distribute unregistered investment contract Securities to public investors.  As part of this scheme to distribute these unregistered Securities without an offering circular, Defendants intentionally omitted from disclosure a vast array of material information that should have been provided to investors and potential investors as part of a lawful distribution of these Securities. The material matters that were intentionally and knowingly omitted and concealed included, *inter alia*:

(a)    a description of the plan of operation of the venture, including budget information, sources of cash and anticipated expenditures such that Plaintiffs could know and understand that the represented revenue share to Plaintiffs was actually significantly less than the amount as represented even before taking into account Plaintiffs' taxes, loan payments, and other fees associated with the TRUMP rental program;

(b)    the number and nature of employees to be involved in the venture such that Plaintiffs could know and understand that these employees would be paid for exclusively by Plaintiffs;

-9-

(c)     the market research and competitive information including the number of competitors and the position of the venture among competitors such that Plaintiffs could understand the rental risks and know that they would be paying monthly fixed overhead fees even when there were no rentals;

(d)     the financial information about the business of the venture, its promoters and each segment of their business such that Plaintiffs could know and understand the Defendants' financial stake and/or what it would cost Defendants if the units were left unoccupied;

(e)     a description of the venture including revenues and expenses for similar products and services offered by the promoters of the venture during the prior three years such that Plaintiffs could know and understand the track record of the Defendants in the market in which TRUMP LAS VEGAS was competing;

(f)     the information relating to compliance with state and local laws and regulations such that Plaintiffs could know and understand that they were purchasing unregistered Securities;

(g)     any pending or threatened legal proceedings or the absence thereof such that Plaintiffs could know and understand the problems facing Defendants;

(h)     information with respect to any resale market for the Securities being sold and the potential for any resale market to develop such that Plaintiffs could know and understand that there would be no ready market for resale of these Securities at prices greater than or equal to the prices paid by Plaintiffs;

(i)     a description of all material risks of the investment such that Plaintiffs could know and understand that they risked losing their entire investment and were extremely unlikely to realize any profit or even recoup their original capital;

-10-

(j)    the transactions with related parties including the developers and their affiliates and relatives such that Plaintiffs could know and understand that Defendants were making a profit on each sale and the amount thereof;

(k)    the method and plan of the distribution of the investment contract Securities such that Plaintiffs could know and understand the amounts that were being paid as sales commissions;

(l)    the use of the proceeds and the approximate amount of such proceeds dedicated to each use such that Plaintiffs could know and understand that Plaintiffs would be paying 100% of the ongoing costs of TRUMP LAS VEGAS and receiving substantially less of the operating income to pay their mortgages, taxes, and other rental program fees;

(m)    the identity of any agreements, arrangements or understandings with all brokers participating in the sales of the investment contract Securities including the compensation received by such persons such that Plaintiffs could know and understand the remuneration paid to the sales agent selling them the Securities;

(n)    the identity, background and compensation of all executive officers and other persons serving in similar capacities as part of the management team such that Plaintiffs could know and understand the relationship between the members of management and others;

(o)    all material contracts relating to the venture including contracts with indemnities or promoters of the venture such that Plaintiffs could know and understand these risks; and

(p)    a description of the investment contract security including the rights and liabilities of the investors and the promoters such that Plaintiffs could analyze these rights and liabilities individually and with a representative.

-11-

26.     Each and every one of these omissions are material to an investor or prospective investor and each was intentionally omitted from disclosures made in connection with sale of the investment contract Securities by the Defendants.

## THE SCHEME TO DEFRAUD AS PERPETRATED ON EACH PLAINTIFF

27.     Plaintiffs William Spradlin and Shirley Spradlin made a 20% deposit of $125,000 contemplating a future closing on the purchase of one of the SECURITIES (unit 5620) offered by Defendants for $625,000. Prior thereto, Mr. Spradlin and Ms. Spradlin met with Mike Eckel, one of Defendants' sales representatives. Although omitting all of the material facts set forth in Paragraph 25 hereinabove, Mr. Eckel did discuss the various financial and economic benefits that would result from participation in Defendants' rental program. Specifically, Mr. Eckel projected that room rental rates would start at $350 per night during the week and increase up to $500 to $600 per night on weekends. Mr. Eckel justified the high rental rate projections by stating that Trump Las Vegas would cater to upscale clientele interested in a luxurious non-gaming facility and willing to pay extra for peaceful accommodations close to the Las Vegas Strip. In addition to projecting high room rates, Mr. Eckel stated that Trump Las Vegas would most likely experience occupancy rates of 90% or above and a rental revenue split of 60/40 between owner and hotel favoring the unit owner. Mr. Eckel also communicated to Plaintiffs that he felt an investment at Trump Las Vegas was so strong that he decided to purchase two units for himself. Ultimately, Mr. Eckel led Plaintiffs to believe that revenue generated from the rental program would easily cover their mortgage payment and more than likely result in significant positive cash flow each month. The deposit was made to purchase the Security by Plaintiffs William and Shirley Spradlin in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiffs William and Shirley Spradlin were convinced by Defendants that as a result of the TRUMP brand, rental program, room rates, occupancy rates, hotel reservations, and the other amenities being delivered by the TRUMP LAS VEGAS enterprise, that the investment in the Security

1    would be profitable and the value of the Security would appreciate, without Plaintiffs William

2    and Shirley Spradlin having to provide any services or oversight of the Defendants and that the

3    transaction was not a securities investment. Plaintiff William and Shirley Spradlins' reliance was

4    induced by Defendants' fraud. Defendants knew at the time of the sale that material information

5    was being withheld and intentionally concealed this material information in order to obtain the

6    deposit and have the contract signed contemplating a future closing.  Defendants knew at the

7    time these statements were made that these statements, and each of them, were false, but made

8    them to defraud the Plaintiffs.  Plaintiffs William and Shirley Spradlin were unaware of

9    Defendants' material omissions and believed these statements were true and had no reason to

10   believe the statements to be false because Defendants' representations were dependent on

11   concealed facts peculiarly within the Defendants' knowledge and control.  But for Defendants'

12   material omissions and false and fraudulent statements, Plaintiffs William and Shirley Spradlin

13   would not have made the deposit or entered into the contract contemplating a future closing to

14   purchase the Security that was not registered, and is not exempt from registration.  As a result of

15   these facts, Plaintiffs are entitled to and hereby seek to rescind the transaction and be restored all

16   money paid to Defendants plus interest thereon from the date of purchase, plus all damages

17   resulting therefrom.

18        28.      Plaintiffs Elliot Sprung and David Sprung made a 20% deposit of $113,000

19   contemplating a future closing on the purchase of one of the SECURITIES (unit 2714) offered by

20   Defendants for $565,000.  Prior thereto, Elliot and David Sprung met with Mike Eckel, one of

21   Defendants' sales representatives. Although omitting all of the material facts set forth in

22   Paragraph 25 hereinabove, Mr. Eckel did discuss the various financial and economic benefits that

23   would result from participation in Defendants' rental program. Specifically, Mr. Eckel stated that

24   Trump Las Vegas was a great investment and that rental rates would be comparable to the most

25   expensive hotels and resorts on the Las Vegas Strip.  Mr. Eckel used the Four Seaons Hotel as a

26   comparable property because he claimed that property was the only 5 star hotel on the Las Vegas

27   Strip and Trump would also be a 5 star property.  Mr. Eckels claimed that Trump Las Vegas

28

1  would cater to an upscale clientele looking for luxurious accommodations in a non-gaming
2  environment. In addition, Mr. Eckels projected 90% occupancy rates, which, coupled with the
3  high rental rates, would generate enough revenue to at least cover the mortgage payment and
4  result in positive cash flow. The deposit was made to purchase the Security by Plaintiffs Elliot
5  and David Sprung in reliance upon Defendants' material omissions and false and fraudulent
6  statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiffs Elliot
7  and David Sprung were convinced by Defendants that as a result of the TRUMP brand, rental
8  program, room rates, occupancy rates, hotel reservations, and the other amenities being delivered
9  by the TRUMP LAS VEGAS enterprise, that the investment in the Security would be profitable
10 and the value of the Security would appreciate, without Plaintiffs Elliot and David Sprung having
11 to provide any services or oversight of the Defendants and that the transaction was not a
12 securities investment. Plaintiffs Elliot and David Sprungs' reliance was induced by Defendants'
13 fraud. Defendants knew at the time of the sale that material information was being withheld and
14 intentionally concealed this material information in order to obtain the deposit and have the
15 contract signed contemplating a future closing. Defendants knew at the time these statements
16 were made that these statements, and each of them, were false, but made them to defraud the
17 Plaintiffs. Plaintiffs Elliot and David Sprung were unaware of Defendants' material omissions
18 and believed these statements were true and had no reason to believe the statements to be false
19 because Defendants' representations were dependent on concealed facts peculiarly within the
20 Defendants' knowledge and control. But for Defendants' material omissions and false and
21 fraudulent statements, Plaintiffs Elliot and David Sprung would not have made the deposit or
22 entered into the contract contemplating a future closing to purchase the Security that was not
23 registered, and is not exempt from registration. As a result of these facts, Plaintiffs are entitled to
24 and hereby seek to rescind the transaction and be restored all money paid to Defendants plus
25 interest thereon from the date of purchase, plus all damages resulting therefrom.

26      29.    Plaintiff Emma Oduca made a 20% deposit of $124,000 contemplating a future
27 closing on the purchase of one of the SECURITIES (unit 5520) offered by Defendants for
28

$620,000. Prior thereto, Plaintiff Oduca met with Mike Eckel, one of Defendants' sales representatives. Although omitting all of the material facts set forth in Paragraph 25 hereinabove, Mr. Eckel did discuss the various financial and economic benefits that would result from participation in Defendants' rental program. Specifically, Mr. Eckel projected that room rental rates at Trump Las Vegas would start at $350 per night during the week and increase up to $600 or more on weekends and holidays with a 90% occupancy rate. He justified his projections, as it relates to rental rates, by comparing Trump Las Vegas to other luxury resorts in Las Vegas including Bellagio and Four Seasons. Mr. Eckel further emphasized the great investment potential of Trump Las Vegas by indicating that the value of units in the building had increased since they first started selling and that the project was almost sold out. Mr. Eckel was aware that Plaintiff Oduca was searching for an investment in the form of an income producing property. To that end, Mr. Eckel clearly indicated that Plaintiff Oduca could expect an investment at Trump Las Vegas to yield enough revenue from the rental program to easily cover her mortgage payment and produce significant cash flow. The deposit was made to purchase the Security by Plaintiff Oduca in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiff Oduca was convinced by Defendants that as a result of the TRUMP brand, rental program, room rates, occupancy rates, hotel reservations, and the other amenities being delivered by the TRUMP LAS VEGAS enterprise, that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiff Oduca having to provide any services or oversight of the Defendants and that the transaction was not a securities investment. Plaintiff Oducas' reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to obtain the deposit and have the contract signed contemplating a future closing. Defendants knew at the time these statements were made that these statements, and each of them, were false, but made them to defraud the Plaintiff. Plaintiff Oduca was unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to

-15-

1   be false because Defendants' representations were dependent on concealed facts peculiarly
2   within the Defendants' knowledge and control. But for Defendants' material omissions and false
3   and fraudulent statements, Plaintiff Oduca would not have made the deposit or entered into the
4   contract contemplating a future closing to purchase the Security that was not registered, and is
5   not exempt from registration. As a result of these facts, Plaintiff is entitled to and hereby seeks
6   to rescind the transaction and be restored all money paid to Defendants plus interest thereon from
7   the date of purchase, plus all damages resulting therefrom.

8         30.    Plaintiff Sally Kim made a 20% deposit of $156,000 contemplating a future
9   closing on the purchase of one of the SECURITIES (unit 1706) offered by Defendants for
10  $780,000. Prior thereto, Plaintiff Kim met with Mike Eckel, one of Defendants' sales
11  representatives. Although omitting all of the material facts set forth in Paragraph 25 hereinabove,
12  Mr. Eckel did discuss the various financial and economic benefits that would result from
13  participation in Defendants' rental program. Specifically, Mr. Eckel projected that room rental
14  rates would be $400 to $500 per night for the type of unit Plaintiff Kim was interested in. Mr.
15  Eckel justified his high rental rate projections by stating that Trump Las Vegas was slated to
16  become a 5-Star resort, similar in quality to the Four Seasons Hotel with comparable rental rates.
17  In addition, Mr. Eckel projected that occupancy rates would be 90% or above and clearly
18  indicated that Ms. Kim would not experience any vacancy problems. Mr. Eckel further
19  emphasized the investment potential of the Trump Hotel by stating on more than one occasion
20  that he had purchased two units himself. Mr. Eckel concluded his sales presentation by stating
21  that the revenue generated by the rental program would, in a "worst case scenario", cause
22  Plaintiff Kim to "break even" each month with regard to her mortgage payment, taxes, and rental
23  program fees. Mr. Eckel clearly indicated, however, that a more likely scenario for Plaintiff Kim
24  was for her to experience a significant positive cash flow generated from the rental program. The
25  deposit was made to purchase the Security by Plaintiff Kim in reliance upon Defendants'
26  material omissions and false and fraudulent statements. Simply stated, as a result of these
27  omissions and misrepresentations, Plaintiff Kim was convinced by Defendants that as a result of
28

1   the TRUMP brand, rental program, room rates, occupancy rates, hotel reservations, and the other

2   amenities being delivered by the TRUMP LAS VEGAS enterprise, that the investment in the

3   Security would be profitable and the value of the Security would appreciate, without Plaintiff

4   Kim having to provide any services or oversight of the Defendants and that the transaction was

5   not a securities investment. Plaintiff Kims' reliance was induced by Defendants' fraud.

6   Defendants knew at the time of the sale that material information was being withheld and

7   intentionally concealed this material information in order to obtain the deposit and have the

8   contract signed contemplating a future closing. Defendants knew at the time these statements

9   were made that these statements, and each of them, were false, but made them to defraud the

10  Plaintiff.  Plaintiff Kim was unaware of Defendants' material omissions and believed these

11  statements were true and had no reason to believe the statements to be false because Defendants'

12  representations were dependent on concealed facts peculiarly within the Defendants' knowledge

13  and control.  But for Defendants' material omissions and false and fraudulent statements,

14  Plaintiff Kim would not have made the deposit or entered into the contract contemplating a

15  future closing to purchase the Security that was not registered, and is not exempt from

16  registration.  As a result of these facts, Plaintiff is entitled to and hereby seeks to rescind the

17  transaction and be restored all money paid to Defendants plus interest thereon from the date of

18  purchase, plus all damages resulting therefrom.

19      31.    Plaintiff TDF Properties, LLC (hereinafter "TDF"), made a 20% deposit of

20  $127,000 contemplating a future closing on the purchase of one of the SECURITIES (unit 3328)

21  offered by Defendants for $635,000.  Prior thereto, Bob Kasday, on behalf of Plaintiff TDF, met

22  with Mike Eckel, one of Defendants' sales representatives. Although omitting all of the material

23  facts set forth in Paragraph 25 hereinabove, Mr. Eckel did discuss the various financial and

24  economic benefits that would result from participation in Defendants' rental program.

25  Specifically, Mr. Eckel projected that rental rates would start at $300 or more per night, and

26  would increase significantly on weekends and holidays.  Mr. Eckel also projected occupancy

27  rates of 90% along with a rental revenue split between owner and hotel of 60/40 favoring the unit

-17-

owner. Mr. Eckels indicated that if Plaintiff TDF did not use the unit it could expect enough revenue generated from the rental program to cover the mortgage payment. Mr. Eckels was aware that Plaintiff TDF was interested in Trump Las Vegas for investment purposes only and described the project as a "great investment" on several occasions. The deposit was made to purchase the Security by Plaintiff TDF in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiff was convinced by Defendants that as a result of the TRUMP brand, rental program, room rates, occupancy rates, hotel reservations, and the other amenities being delivered by the TRUMP LAS VEGAS enterprise, that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiff TDF having to provide any services or oversight of the Defendants and that the transaction was not a securities investment. Plaintiff TDFs' reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to obtain the deposit and have the contract signed contemplating a future closing. Defendants knew at the time these statements were made that these statements, and each of them, were false, but made them to defraud the Plaintiff. Plaintiff TDF was unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because Defendants' representations were dependent on concealed facts peculiarly within the Defendants' knowledge and control. But for Defendants' material omissions and false and fraudulent statements, Plaintiff TDF would not have made the deposit or entered into the contract contemplating a future closing to purchase the Security that was not registered, and is not exempt from registration. As a result of these facts, Plaintiff is entitled to and hereby seeks to rescind the transaction and be restored all money paid to Defendants plus interest thereon from the date of purchase, plus all damages resulting therefrom.

32.     Plaintiff Kuniko Ishida made a 20% deposit of $120,000 contemplating a future closing on the purchase of one of the SECURITIES (unit 4219) offered by Defendants for $600,000. Prior thereto, Plaintiff Ishida, along with her buyer's agent, Yoshi Sato, met with

-18-

Mike Eckel, one of Defendants' sales representatives. Although omitting all of the material facts set forth in Paragraph 25 hereinabove, Mr. Eckel did discuss the various financial and economic benefits that would result from participation in Defendants' rental program. Specifically, Mr. Eckel projected that room rental rates at Trump Las Vegas would be similar or equal to those charged at the Bellagio hotel. In addition, Mr. Eckel projected that occupancy rates would be similar to those experienced at a comparable Trump project in New York City, which he claimed was 97%. Mr. Eckel also boasted that Trump Las Vegas would have a better rental revenue split for owners than another condo-hotel in Las Vegas known as MGM Signature. Mr. Eckel claimed that owners at MGM Signature were only receiving a 54/46 rental revenue split while owners at Trump would receive a 60/40 split favoring the unit owner. Mr. Eckel further emphasized the economic potential of the rental program by claiming that he had bought two units for himself at Trump Las Vegas. Mr. Eckel was aware that Plaintiff Ishida was a local resident of Las Vegas looking for a good investment and not interested in occupying her unit. The deposit was made to purchase the Security by Plaintiff Ishida in reliance upon Defendants' material omissions and false and fraudulent statements. Simply stated, as a result of these omissions and misrepresentations, Plaintiff Ishida was convinced by Defendants that as a result of the TRUMP brand, rental program, room rates, occupancy rates, hotel reservations, and the other amenities being delivered by the TRUMP LAS VEGAS enterprise, that the investment in the Security would be profitable and the value of the Security would appreciate, without Plaintiff Ishida having to provide any services or oversight of the Defendants and that the transaction was not a securities investment. Plaintiff Ishida's reliance was induced by Defendants' fraud. Defendants knew at the time of the sale that material information was being withheld and intentionally concealed this material information in order to obtain the deposit and have the contract signed contemplating a future closing. Defendants knew at the time these statements were made that these statements, and each of them, were false, but made them to defraud the Plaintiff. Plaintiff Ishida was unaware of Defendants' material omissions and believed these statements were true and had no reason to believe the statements to be false because Defendants' representations were

1   dependent on concealed facts peculiarly within the Defendants' knowledge and control. But for

2   Defendants' material omissions and false and fraudulent statements, Plaintiff Ishida would not

3   have made the deposit or entered into the contract contemplating a future closing to purchase the

4   Security that was not registered, and is not exempt from registration. As a result of these facts,

5   Plaintiff Ishida is entitled to and hereby seeks to rescind the transaction and be restored all money

6   paid to Defendants plus interest thereon from the date of purchase, plus all damages resulting

7   therefrom.

8                                **ARBITRATION EXEMPTION CLAIMED**

9           33.    Pursuant to Rule 3 of the Nevada Arbitration Rules, this matter should not be

10   subject to arbitration because (1) damages for each Plaintiff are in excess of $50,000.00; (2)

11   significant issues of public policy are involved; (3) this is a class action complaint; and, (4) the

12   arbitration provision is unconscionable.

13          34.    Public policy concerns also dictate that Defendants cannot compel arbitration

14   because terms of the Purchase Agreement, which include an arbitration provision, are

15   unenforceable under NRS 90.840, subsection 1, as a matter of law because the contract is an

16   illegal contract in the State of Nevada. The sale of unregistered Securities renders the arbitration

17   provision unenforceable as a matter of law and public policy.

18          35.    Public Policy concerns dictate that Defendants cannot compel arbitration because

19   the arbitration provision in the Purchase Agreement is both procedurally and substantively

20   unconscionable under the facts of this case.

21

22                                      **CLASS ALLEGATIONS**

23          36.    Plaintiffs bring this action pursuant to Rule 23 of the Nevada Rules of Civil

24   Procedure as a class action on their own and on behalf of a class defined as:

25              **ALL INDIVIDUALS WHO MADE A DEPOSIT TO**
                **PURCHASE ONE OR MORE OF THE SECURITIES IN**
26              **THE TRUMP INTERNATIONAL HOTEL & TOWER LAS**
                **VEGAS FROM DEFENDANTS, AND WHO HAVE NOT**
27              **HAD THEIR DEPOSIT RETURNED IN FULL TO THEM.**

28
                                            ▪20▪

Excluded from the Class are Defendants, any parent, subsidiary of affiliate of Defendants, and their officers, directors, and employees, who are or have been employed by Defendants during the above-defined Class Period, and any judicial officer who may preside over this cause of action.

37.    The requirements for maintaining this action as a class action under Rule 23 of the Nevada Rules of Civil procedure are satisfied in that:

a.    It is impracticable to bring all members of the Class before the Court. Plaintiffs estimate that there are hundreds of Class Members, geographically spread throughout the United States, and that their identities can be ascertained from Defendants' books and records. Attempting to join and name each Class member as a Co-Plaintiff would be unreasonable and impracticable.

b.    There are questions of law and fact common to the Class, which are identical for each member of the Class and which predominate over the questions affecting the individual Class members, if any. Among these common questions of law and fact are:

(i)    Whether Defendants sold securities within the meaning of N.R.S. § 90.460 and/or the Securities Act of 1933;

(ii)    Whether Defendants registered their Securities;

(iii)    Whether Defendants' conduct violated N.R.S. § 90.460;

(v)    Whether Defendants' conduct violated  Section 12(a)(1);

(vi)    Whether Defendants' conduct violated  Section 12(a)(2);

(vii)    Whether Defendants' conduct violated N.R.S. § 90.570;

(viii)    Whether Defendants represented that the investments in the TRUMP LAS VEGAS condo-hotel would earn a rate of return and/or was guaranteed, secured or protected, which Defendants knew or had reason to know was false and/or misleading;

(ix)    Whether Defendants concealed material facts and/or omitted to state material facts about the investment in the TRUMP LAS VEGAS enterprise;

-21-

1      (x)    Whether Defendants made untrue statements of material facts
2  about the investment in the TRUMP LAS VEGAS enterprise;

3      (xi)    Whether Defendants failed to comply with applicable laws
4  and regulations concerning the marketing and sale of investment securities;

5      (xii)    Whether Defendants conducted the offering and sale of
6  investment Securities in the form of the condominium-hotel room units at the Trump
7  International Hotel & Tower Las Vegas without all the required licensing and regulatory
8  approvals; and

9      (xiii)    Whether Defendants violated the Interstate Land Sales and Full
10  Disclosure Act, 15 U.S.C. § 1703(a)(2).

11      c.    The scripted sales representations and practices here made to the class
12  representatives and to each member of the class were part of a common scheme applicable
13  similarly to each of them.  As to each member of the class the material omissions were the same,
14  the representations of branding and association with the TRUMP name were the same, the
15  dependency upon the success or failure of the TRUMP LAS VEGAS branded enterprise was the
16  same, the promotion of the investment that a valuable benefit was critical for all, the lack of any
17  right to exercise any practical or actual control over the managerial decisions of the TRUMP
18  LAS VEGAS enterprise was the same for all Plaintiffs and the other representations herein
19  alleged were similarly presented by Defendants to the members of the Class and the named
20  Plaintiffs.  The material omissions and the sales techniques used by Defendants were part of a
21  coordinated scheme involving common sales materials, instructions, training and practice review.
22  The scripted sales pitches being made to each purchaser member of the Class included the same
23  material omissions and representations and the same elements of deception described for the
24  named Plaintiffs.  Each of the members of the Class justifiably relied on those material omissions
25  and representations of fact in making their investment purchase decisions, and each has been
26  similarly damaged by the falsity of the statements so relied upon.

27      d.    The claims of the representative Plaintiffs are typical of the claims of

28

-22-

1  the Class in that each Plaintiff purchased one or more of the Securities in the TRUMP LAS
2  VEGAS condo-hotel offered by Defendants.

3          e.      The claims of the representative Plaintiffs will fairly and adequately
4  protect the interests of the Class. The Class interests are coincident with, and not antagonistic to,
5  those of the Plaintiffs. Furthermore, Plaintiffs are represented by experienced class action
6  counsel.

7      38.     In this action, Plaintiffs and the Class seek all equitable, compensatory, special
8  and punitive damages authorized under Nevada law for which class-wide relief is available,
9  disgorgement, restitution and reasonable attorneys' fees and costs incurred in the prosecution of
10  this action.  There are no manageability problems due to variations in state laws or choice of law
11  provisions, because Nevada law applies to the claims of all the members of the Class asserted
12  herein.  Class wide litigation of the predominating common issues is superior to any other form
13  of litigation, including individual litigation.

14      39.     The conduct of the Defendants in the offering and sale of the Securities
15  to the other members of the Class followed substantially the same pattern and involved
16  substantially the same conduct. The Securities sold to the Class were securities within the
17  meaning of Nevada law for the same reasons set forth in Paragraph 2 above.  The offering and
18  sale of the Securities to the members of the Class was fraudulent, illegal and a deceptive trade
19  practice for the same reasons the offering and sale of the Securities to the Plaintiffs was
20  fraudulent, illegal and a deceptive trade practice.

21

22                          **FIRST CAUSE OF ACTION**
23          **(Violation of  Section 12(a)(1) of the 1933 Act by All Defendants)**

24      40.     Plaintiffs reallege and incorporate herein by reference the allegations contained in
25  the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.
26  Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated
27  persons as herein defined.

28

41.   No registration statement was filed or in effect with the SEC pursuant to the Securities Act and no exemption from registration exists with respect to the Securities and transactions described in this Complaint.

42.   Defendants, directly and indirectly, have: (a) made use of the means or instruments of transportation or communications in interstate commerce or of the mails to sell the Securities as described herein, through the use or medium of a prospectus or otherwise; (b) caused  the Securities  to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; and/or (c) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise, as described in this Complaint, without a registration statement having been filed or being in effect with the Commission as to the Securities or qualify for an exemption therefrom.

43.   Defendants, directly and indirectly, offered to sell, and indeed sold these Securities to Plaintiffs without a registration statement having been filed or being in effect with the SEC or qualify for an exemption therefrom.. By reason of the foregoing, Defendants  have violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e (c).

44.   By reason of the conduct alleged herein, Defendants violated Section 12(a)(1) of the 1933 Act. Plaintiffs demand rescission of these sales of unregistered Securities.

45.   Defendants affirmatively and actively concealed their unlawful conduct from Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants were violating the securities  laws as alleged herein until shortly before this class action litigation was commenced. As a result of the active concealment of the unlawful conduct  by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

-24-

1

2

**SECOND CAUSE OF ACTION**
(Violation of  Section 12(a)(2) of the 1933 Act by All Defendants)

3

46.     Plaintiffs reallege and incorporate herein by reference the allegations contained in

4

the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

5

Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated

6

persons as herein defined.

7

47.     Under Section 12(a)(2) of the Securities Act of 1933, Defendants were sellers,

8

offerors, and/or solicitors of the Securities. Defendants solicited the sale of the Securities to each

9

of the Class Members for Defendants' own financial benefit.

10

48.     The statements referred to hereinabove were made in scripted oral representations

11

made by Defendants  to the Class Members. The scripted oral representations to the Class

12

Members contained untrue statements of material facts, omitted other facts necessary to make the

13

statements made not misleading and failed to disclose material facts. Defendants acted to sell the

14

Securities by way of the scripted oral representations. Defendants'  actions included preparing

15

the scripted oral presentations and other material used in the sale of the Securities which were

16

false and misleading because they did not disclose the material adverse facts set forth above.

17

49.     Plaintiffs and the other members of the Class purchased the Securities  pursuant to

18

the Defendants' scripted oral representations.  Plaintiffs and the other members of the Class did

19

not know, and in the exercise of reasonable diligence could not have known, of the untruths and

20

omissions contained in or made in connection with Defendants' scripted oral representations.

21

50.     By reason of the conduct alleged herein, Defendants violated Section 12(a)(2) of

22

the 1933 Act.  As a proximate result of Defendants' violations Plaintiffs and each of the Class

23

Members have been damaged.

24

51.     Defendants affirmatively and actively concealed their unlawful conduct from

25

Plaintiffs. Defendants concealed the true nature of their unlawful conduct and acts in furtherance

26

thereof, and actively concealed their activities through various other means and methods to avoid

27

detection. Plaintiffs did not discover, and could not have discovered through the exercise of

28

-25-

1  reasonable diligence, that Defendants were violating the securities  laws as alleged herein until

2  shortly before this class action litigation was commenced. As a result of the active concealment

3  of the unlawful conduct  by Defendants, any and all applicable statutes of limitations otherwise

4  applicable to the allegations herein have been tolled.

5

6

**THIRD CAUSE OF ACTION**
**(Violation of N.R.S. 90.460 by All Defendants)**

7      52.      Plaintiffs reallege and incorporate herein by reference the allegations contained in

8  the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

9  Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated

10  persons as herein defined.

11      53.      The entire amounts paid by each and every Plaintiff was subjected to the risk of

12  the TRUMP LAS VEGAS enterprise to rent the Securities, branded as TRUMP hotel rooms, at a

13  projected rate for a projected range of days within each year.  All of the economic benefits to be

14  derived from the Security were inextricably bound to the success of the entire TRUMP LAS

15  VEGAS branded enterprise as a whole.  The occupancy rates of the Security, from which

16  Plaintiffs sought to derive rental profits, were dependent upon the success of the TRUMP LAS

17  VEGAS brand.

18      54.      The furnishing of the amounts paid by each and every Plaintiff for the Securities

19  purchased, in the form of a series of deposits totaling 20% of the purchase price, were induced by

20  Defendants' omissions of material fact set forth in Paragraph 25 hereinabove and representations

21  which gave rise to a reasonable understanding among the Plaintiffs that a valuable benefit in the

22  form of prospective economic benefits would accrue to Plaintiffs from the entrepreneurial or

23  managerial efforts of others managing the Trump International Hotel & Tower Las Vegas and the

24  Trump Rental Program, which induced Plaintiff to purchase the Securities.  The economic

25  benefit, over and above the amounts paid for the purchase of the Securities, that Defendants'

26  sales team promised would flow to Plaintiffs from the purchase of the Securities were the

27  primary motivation behind Plaintiffs' purchase of the Securities.  Residency was never discussed

28

1  as a significant motivation for purchase between any member of Defendants' sales or rental
2  representatives and any of the Plaintiffs.

3       55.    Plaintiffs did not intend to receive any right to exercise practical and/or actual
4  control over the managerial decisions of the TRUMP LAS VEGAS enterprise. Furthermore,
5  Plaintiffs did not exercise any power to influence the utilization of the capital invested in the
6  Securities. Instead, the economic benefits that Plaintiffs were told by Defendants would flow
7  from the purchase of the Securities would result from name recognition of the TRUMP LAS
8  VEGAS brand, the strength of the rental program management, and the ability of the reservation
9  system of the rental program to yield income after the purchase.

10      56.    Defendants issued the Securities, which were not exempt from registration, to
11  Plaintiffs without abiding by the registration requirements of Nevada, did not have any
12  preemption therefrom, and therefore Plaintiffs, under N.R.S. 90.660, may recover the
13  consideration paid for the Securities and interest at the legal rate of this State from the date of
14  payment, costs and reasonable attorney's fees, less the amount of income received on the
15  Securities.

16      57.    Plaintiffs are also entitled to all remedies available under N.R.S. 90.640, including
17  a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a
18  writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a
19  single violation or $100,000 for multiple violations in a single proceeding or a series of related
20  proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for
21  the Defendants' assets; an order of payment of the divisions investigative costs; or an order of
22  such other relief as the court deems just.

23

24                        **FOURTH CAUSE OF ACTION**
25                  **(Violation of N.R.S. 90.570 by all Defendants)**

26      58.    Plaintiffs reallege and incorporate herein by reference the allegations contained in

27

28

1  the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

2  Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated

3  persons as herein defined.

4      59.    In connection with the offer to sell, sale, offer to purchase or purchase of a

5  security, a person shall not, directly or indirectly:

6      1.    Employ any device, scheme or artifice to defraud;

7      2.    Make an untrue statement of a material fact or omit to state a material fact
            necessary in order to make the statements made not misleading in the light
8            of the circumstances under which they are made; or

9      3.    Engage in an act, practice or course of business which operates or would
            operate as a fraud or deceit upon a person.
10

11  N.R.S. § 90.570.

12      60.    Defendants, through the sales and rental management presentations of the

13  unregistered Securities have employed a device, scheme or artifice to defraud described in

14  specificity above in this Complaint and incorporated by reference herein, by making material

15  omissions of fact as set forth in Paragraph 25 above and false representations as set forth herein.

16      61.    Defendants, further through the sales and rental management presentations of the

17  unregistered Securities, as described with specificity above in this Complaint and incorporated by

18  reference herein, made several untrue statements of material facts and/or omitted to state material

19  facts necessary in order to make the statements made not misleading in the true circumstances

20  concerning the Defendants' actual ability to forecast or predict the profitability of participating in

21  Defendants' rental management program and the minimum rental rates, the minimum occupancy

22  rates, and the anticipated appreciation rates of the Securities.

23      62.    Defendants, through the intentional omission of material facts and false and

24  fraudulent sales and rental presentations described with specificity above, engaged in acts,

25  practices and/or a course of business which operated as a fraud or deceit upon the Plaintiffs by

26  inducing Plaintiffs to purchase the Securities with the clear intent to participate in Defendants'

27  rental management program based on dubious predictions of economic expectations that the

28

-28-

1   Defendants knew to be false at the time such predictions were made. Moreover, the Defendants

2   knew that these statements were untrue and the omissions were material and misleading, but

3   made them to defraud Plaintiffs.

4        63.     Plaintiffs did not know that the statements of material facts made to them by

5   Defendants during the sales presentations were untrue or that there was an omission of a

6   statement of material facts.

7        64.     Plaintiffs did not receive any written offer, including financial and other

8   information necessary to correct all material misstatements or omissions in the information

9   required to be furnished to Plaintiffs, as of the time of the sale of the Securities.

10        65.     Defendants, pursuant to the fraudulent scheme, business practice, and on the basis

11   of untrue material facts and omissions, sold the Securities, which were not exempt from

12   registration, to Plaintiffs without abiding by the registration requirements of Nevada and

13   therefore Plaintiffs, under N.R.S. 90.660, may recover the consideration paid for the Securities

14   and interest at the legal rate of this State from the date of payment, costs and reasonable

15   attorney's fees, less the amount of income received on the Securities.

16        66.     Plaintiffs are also entitled to all remedies available under N.R.S. 90.640, including

17   a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a

18   writ of prohibition or mandamus; the imposition of a civil penalty of not more than $2,500 for a

19   single violation or $100,000 for multiple violations in a single proceeding or a series of related

20   proceedings; declaratory judgment; restitution; the appointment of a receiver or conservator for

21   the Defendants' assets; an order of payment of the divisions investigative costs; or an order of

22   such other relief as the court deems just.

23

24                               **FIFTH CAUSE OF ACTION**

25            **(Violation of N.R.S. Chapter 598, et seq. by all Defendants)**

26        67.     Plaintiffs reallege and incorporate herein by reference the allegations contained in

27   the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

28

1  Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated
2  persons as herein defined.

3      68.     Plaintiffs bring this claim under Nevada consumer fraud laws, particularly NRS
4  Sections 41.600 and 598.0903, *et seq.*, on behalf of themselves and the Class who purchased the
5  air rights to condominium hotel room units from Defendants, and who were thus subject to
6  Defendants' above-described deceptive, unlawful and fraudulent conduct.

7      69.     The air rights to condominium hotel room units, as described above, were
8  purchased by the Plaintiffs and by other consumers similarly situated primarily for investment
9  purposes.

10     70.     The Defendants violated their statutory duty under the Nevada Deceptive Trade
11  Practices Act by advertising, offering and selling the air rights to condominium-hotel room units
12  as investment securities at TRUMP LV as described herein above.

13     71.     The Defendants violated their duty under the aforementioned statutes, including
14  but not limited to, § 598.092 (5)(a), (b), (c), (f) and § 598.0923(1), by, among other things, (a)
15  representing that the investment Securities in the form of the condominium-hotel room units at
16  the TRUMP LAS VEGAS would earn a rate of return and/or was guaranteed, secured or
17  protected, which Defendants knew or had reason to know was false and/or misleading; (b)
18  making untrue statements of material facts and/or omitting to state material facts about the
19  investment Securities in the form of the condominium-hotel room units at TRUMP LAS
20  VEGAS; (c) failing to comply with applicable laws and regulations concerning the marketing
21  and sale of investment Securities; and/or (d) conducting the offering and sale of investment
22  Securities in the form of the condominium-hotel room units at the TRUMP LAS VEGAS condo-
23  hotel without all the required licensing and regulatory approvals.

24     72.     The Defendants' actions as alleged herein were materially deceptive and
25  constituted fraud, false pretense, misrepresentation and the concealment, suppression and
26  omission of material facts with the intent that Plaintiffs and the Class would rely upon the
27
28

1   fraudulent misrepresentation, concealment, suppression and omission of such material facts, all

2   in violation of the Nevada Consumer Fraud and Deceptive Business Practices Acts.

3        73.    Plaintiffs and the other members of the Class were injured by the many violations

4   of the Nevada Deceptive Trade Practices Act, and Plaintiffs and the Class have thereby been

5   damaged in an amount to be proven at trial.

6

7                        **SIXTH CAUSE OF ACTION**
                    **(Fraudulent Misrepresentation by All Defendants )**
8

9        74.    Plaintiffs reallege and incorporate herein by reference the allegations contained in

10  the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein.

11  Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated

12  persons as herein defined.

13       75.    Defendants made false and fraudulent misrepresentations, as described with

14  specificity above and incorporated by reference herein, that, inter alia, as a result of TRUMP

15  LAS VEGAS branding, hotel reservations, casino operations, room rates, occupancy rates,

16  Defendants' rental program, and the other amenities being delivered by the TRUMP LAS

17  VEGAS enterprise, the investment in the Securities would be profitable and the value of the

18  Securities would appreciate, without Plaintiffs having to provide any services or oversight of the

19  Defendants.

20       76.    Defendants, and each of them, made these representations with the knowledge or

21  belief that the representations were false or with an insufficient basis of information for making

22  the representations.

23       77.    Defendants intended to induce Plaintiffs to act upon the misrepresentations by

24  entering into the sales agreement to purchase the Securities with the clear intent that Plaintiffs

25  would participate in the Trump Rental Program at a future date.

26       78.    Plaintiffs were ignorant of the truth of the misrepresentations and concealments

27  made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants.

28

                                    ▪31▪

79.     As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel with the expectation they would participate in the Defendants' rental management program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

80.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

81.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damage.

## SEVENTH CAUSE OF ACTION
### (Negligent Misrepresentation)

82.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

83.     Defendants supplied false guidance in discussions relating to the sale of Defendants' condominium hotel units at TRUMP LAS VEGAS as described with specificity above and incorporated by reference herein. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information which consisted of misrepresentations, not only concerning the property value of the condominium hotel units, but also concerning the anticipated rental value and occupancy rate of the units, and the profitability of participating in Defendants' rental management program. Such misrepresentations were made in the course of Defendants' business, profession or employment, and/or in any such transaction in which Defendants had a pecuniary interest.

84.     The misrepresentations made to Plaintiffs included, inter alia, the false and fraudulent statements described above with specificity in this Complaint and incorporated by reference herein.

85.     Defendants, and each of them, made these representations negligently, and without any reasonable basis for believing them to be true.

86.     Plaintiffs were ignorant of the truth of the misrepresentations and concealments made by Defendants and in fact justifiably relied on the misrepresentations made by Defendants and each of them.

87.     As a direct and proximate result of Defendants' misstatements and misrepresentations of material facts, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, with the clear understanding that they only entered into the Purchase Agreement so that they could participate in the TRUMP rental program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

88.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

## EIGHTH CAUSE OF ACTION
### (Fraud in the Inducement)

89.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

90.     Plaintiffs contracted with Defendants  and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of condominium hotel units at TRUMP LAS VEGAS.  Defendants utilized an inside and outside sales team in order to make false representations to the Plaintiffs in order to induce their payment of a deposit and their consent to the purchase agreement and future participation in rental management agreement.

Both Defendants' inside and outside sales team had knowledge or belief that the representations were false (or knowledge that it had an insufficient basis for making the representations).

91.     The material omissions and false representations made to Plaintiffs included, *inter alia*, the fraudulent statements described with specificity above and incorporated by reference herein.

92.     Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the economic value of the Securities.  Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

93.     The concealment of the true facts from Plaintiffs was done with the intent to induce their consent to enter into the purchase agreement with the expectation that each Plaintiff would enter the Trump rental management agreement.

94.     Plaintiffs justifiable reliance on statements made by Defendants was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

95.     As a result of Defendants' false representations regarding the true economic value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments.

96.     As a result of the false representations, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, with the clear understanding that they only entered into the Purchase Agreement so that they could participate in the TRUMP rental program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

97.     As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

98.     Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious,

oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

## NINTH CAUSE OF ACTION
### (Fraudulent Concealment)

99.     Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

100.    Plaintiffs contracted with Defendants and relied upon Defendants to provide their professional expertise and judgment with respect to the purchase of Securities at TRUMP LAS VEGAS. Defendants utilized an inside and outside sales team in order to sell these units. The teams employed by Defendants concealed and/or suppressed materials facts relating to the true economic value of the condominium units.

101.    The material facts concealed from Plaintiffs included, inter alia, the fraudulent statements described with specificity above and incorporated by reference herein.

102.    Defendants concealed and suppressed the material facts regarding the true economic value of such investment from Plaintiffs, despite knowing the true and correct facts regarding the Securities. The misrepresentations were made and the true and correct facts concealed by Defendants in order to intentionally induce the Plaintiffs' consent to purchase the condominium unit and enter into the rental management agreement with Defendants.

103.    Defendants, and each of them, had a duty to disclose the true nature of all known material facts and circumstances surrounding the rental values, expected rental occupancy rate, and relevant material facts described above and incorporated by reference herein. Defendants had exclusive knowledge of all such material facts and such material facts were not known or reasonably accessible to Plaintiffs.

104.    Plaintiffs' reliance on statements made by Defendants, and each of them, was justified as Defendants purported to have professional expertise concerning the economic value of the condominium hotel units.

105.    As a result of Defendants' intentional misrepresentation of material facts regarding the true economic value of the condominium hotel units complained of in this complaint, Plaintiffs were unaware of the true nature of the facts concerning the true value of the condominium hotel units as economic investments. Had Plaintiffs been aware of the material facts concealed by Defendants, Plaintiffs would not have entered into any agreements with the Defendants.

106.    As a result of the concealment alleged, Plaintiffs entered into a written agreement for the purchase of the condominium hotel, with the clear understanding that they only entered into the Purchase Agreement so that they could participate in the TRUMP rental program, and suffered damages as more fully set forth herein above and in an amount to be proved at trial.

107.    As a result, Plaintiffs are, in the alternative, entitled to rescission of the contract, an accounting, and the return of any and all money or property given, plus interest and expenses.

108.    Defendants had actual knowledge of the fact that the representations were in fact false, and for these reasons, and because the conduct by these Defendants was malicious, oppressive and/or fraudulent, Plaintiffs are, therefore, entitled to punitive damages to make an example of and to punish these Defendants in addition to actual damages.

## TENTH CAUSE OF ACTION
### (Violation of Interstate Land Sales Full Disclosure Act (ILSA),15 U.S.C. § 1703(a)(2))

109.    Plaintiffs reallege and incorporate herein by reference the allegations contained in the preceding and subsequent Paragraphs of this Complaint as though fully set forth herein. Plaintiffs bring this cause of action on behalf of themselves and the Class of similarly situated persons as herein defined.

110.    The Interstate Land Sales Full Disclosure Act ("ILSA"), codified at 15 U.S.C. §

1701 *et seq.*, was enacted by Congress in 1968 to protect consumers from fraud and abuse in the sale or lease of land. ILSA applies to the sale of condominium units, and is administered by the U.S. Department of Housing and Urban Development.

111.   ILSA applies to the Purchase Agreements entered into by Plaintiffs for the purchase and sale of SECURITIES in TRUMP LAS VEGAS, which do not fall under any of the exemptions set forth in ILSA.

112.   Defendants made use of means and instruments of transportation and communication in interstate commerce and of the mails to sell SECURITIES in TRUMP LAS VEGAS in the form of air rights to condominium-hotel room units.

113.   Pursuant to 15 U.S.C. § 1703(a)(2), it is unlawful for any developer or agent, with respect to the sale or lease of any lot (including a condominium unit) not exempt under ILSA to:

   a)   employ any device, scheme, or artifice to defraud, 15 U.S.C. § 1703(a)(2)(A);

   b)   obtain money or property by means of any true statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision, *id.* § 1703(a)(2)(B); or

   c)   engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser, *id.* § 1703(a)(2)(C).

114.   The regulations promulgated by HUD under ILSA, which are codified at 24 C.F.R. § 1710 *et seq.*, provide further detail as to what constitutes a deceptive or misleading sales practice in contravention of ILSA. For example, 24 C.F.R. § 1715.20(a) provides that, with

respect to Property Report – the main disclosure document provided to purchasers pursuant to ILSA – no developer may "Give the Property Report to a purchaser along with other materials when done in such a manner as to conceal the Property Report from the purchaser."

115.     Furthermore, 24 C.F.R. § 1715.24(h) provides that it is unlawful to "[u]se, as a sales inducement, any representation that any lot has good investment potential or will increase in value unless it can be established, in writing, that:(1) Comparable lots or parcels in the subdivision have, in fact, been resold by their owners on the open market at a profit, or; (2) There is a factual basis for the represented future increase in value and the factual basis is certain, and; (3) The sales price of the offered lot does not already reflect the anticipated increase in value due to any promised facilities or amenities. The burden of establishing the relevancy of any comparable sales and the certainty of the factual basis of the increase in value shall rest upon the developer."

116.     The conduct of Defendants, as alleged with particularity in the preceding causes of action, violated 15 U.S.C § 1703(a)(2)(A)-(C) and the pertinent regulations. That is, Defendants violated 15 U.S.C § 1703(a)(2)(A)-(C) in failing to register the offering of SECURITIES, as per the requirements of both federal and Nevada law, and falsely representing that the hotel had good investment potential, without meeting the requirements in 24 C.F.R. § 1715(24)(h).

117.     Furthermore, Defendants made material misrepresentations with respect to the size of the hotel and the square footage of the units contained therein.

118.     During sales presentations conducted to induce individuals to buy the SECURITIES, Defendant distributed "fact sheets" which indicated that the hotel's studio units would contain 635 square feet. In reality, said units were built to a dimension of 529 square feet.

119.     TRUMP LV was promoted as a 64-story tower. In reality the tower only has 56 floors numbered 1-9 and 18-64, which were renumbered by the Defendants so as to confuse the buyers into believing that the floor on which their unit was located corresponded to the number

of stories that were advertised. In addition, the Defendants charged a premium price for upper floor units which did not correspond to the number of stories advertised and promoted.

120. Defendant also violated ILSA by giving to Plaintiffs and other Class members the Property Report along with other materials in such a manner as to conceal the Property Report from the Plaintiffs and other Class members.

121. The foregoing omissions and representations were false at the time they were made, and Defendant knew or should have known them to be false.

122. Defendant made use of means and instruments of transportation and communication in interstate commerce and of the mails in making the foregoing omissions and representations.

123. Defendant made the foregoing omissions and representations with the intent to induce Plaintiffs, and other members of the Class, to act upon them.

124. Plaintiffs, and other members of the Class, were injured by acting in reliance on Defendant's omissions and representations.

125. Defendant had actual knowledge of the wrongfulness of its conduct and the high probability that injury or damage to Plaintiffs and other members of the Class would result and, despite that knowledge, intentionally pursued that conduct, resulting in injury or damage to Plaintiffs and other members of the Class. Defendant's conduct was at worst willful, but at the very least so reckless or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiffs and other members of the Class.

## REQUEST AND PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

## **PRAYER FOR RELIEF**

Plaintiffs pray for judgment and relief on behalf of themselves, and on behalf of the Class, and against Defendants as follows:

1.    For rescission and restitution as required by law;

2.    For damages according to proof;

3.    For interest on all damages as allowed by the laws of the State of Nevada according to proof at time of trial;

4.    For a temporary restraining order, permanent or temporary prohibitory or mandatory injunction or a writ of prohibition or mandamus;

5.    For the imposition of a civil penalty of not more than $2,500 for a single violation or $100,000 for multiple violations in a single proceeding or a series of related proceedings;

6.    For the issuance of a declaratory judgment;

7.    For an order for an accounting;

8.    For an order of punitive damages.

9.    For the appointment of a receiver or conservator for the Defendants' assets;

10.    For an order of payment of the divisions investigative costs;

11.    For an order of such other relief as the court deems just;

12.    For consideration paid for the Securities and interest at the legal rate of Nevada from the date of payment plus all expenses incurred, costs and reasonable attorney's fees, less the amount of income received on the Securities; and

13.    For damages for each Plaintiff who no longer owns the Securities in the amount that would be recoverable upon a tender less the value of the Securities when the Plaintiff disposed of it, plus interest at the legal rate of this State from the date of disposition of the Securities, costs and reasonable attorney's fees determined by the court. Tender requires only

//

//

//

■40■

1  notice of willingness to exchange the Securities for the amount specified.

2

3  Dated: September 22, 2008                    GERARD & ASSOCIATES

4
                                    By:    _Ricardo Ehman_____
5                                          Robert B. Gerard, Esq
                                           Nevada State Bar #005323
6                                          Ricardo R. Ehmann, Esq.
                                           Nevada State Bar #010576
7                                          Gerard & Associates
                                           2840 South Jones Blvd.
                                           Building D, Unit 4
8                                          Las Vegas, Nevada 89146
                                           Telephone:    (702) 251-0093
9                                          Facsimile:    (702) 251-0094

10                                         Kyle Nordrehaug, Esq.
                                           California State Bar #205975
11                                         Blumenthal & Nordrehaug
                                           2255 Calle Clara
12                                         La Jolla, California 92037
                                           Telephone:    (858) 551-1223
13                                         Facsimile:    (858) 551-1232

14                                         Burton Wiand, Esq.
                                           Florida State Bar #407690
15                                         Fowler White Boggs Banker, P.A.
                                           501 East Kennedy Blvd.
16                                         Tampa, FL 33602
                                           Telephone:    (813) 228-7411
17                                         Facsimile:    (813) 229-8313

18                                         Jared H. Beck, Esq.
                                           Florida State Bar #20695
19                                         Elizabeth Beck, Esq.
                                           Florida State Bar #20697
20                                         BECK & LEE
                                           Courthouse Plaza Building
21                                         28 West Flagler Street, Suite 555
                                           Miami, Florida 33130
22                                         Telephone:    (305) 789-0072
                                           Facsimile:    (786) 206-2447

23
                                           *Attorneys For The Plaintiffs*
24

25

26

27

28                                    -41-

## DEMAND FOR JURY TRIAL

Plaintiffs demand jury trial on issues triable to a jury.

Dated: September 22, 2008        GERARD & ASSOCIATES

By: _____

Robert B. Gerard, Esq
Nevada State Bar #005323
Ricardo R. Ehmann, Esq.
Nevada State Bar #010576
Gerard & Associates
2840 South Jones Blvd.
Building D, Unit 4
Las Vegas, Nevada 89146
Telephone:   (702) 251-0093
Facsimile:   (702) 251-0094

Kyle Nordrehaug, Esq.
California State Bar #205975
Blumenthal & Nordrehaug
2255 Calle Clara
La Jolla, California 92037
Telephone:   (858) 551-1223
Facsimile:   (858) 551-1232

Burton Wiand, Esq.
Florida State Bar #407690
Fowler White Boggs Banker, P.A.
501 East Kennedy Blvd.
Tampa, FL 33602
Telephone:   (813) 228-7411
Facsimile:   (813) 229-8313

Jared H. Beck, Esq.
Florida State Bar #20695
Elizabeth Beck, Esq.
Florida State Bar #20697
BECK & LEE
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, Florida 33130
Telephone:   (305) 789-0072
Facsimile:   (786) 206-2447

***Attorneys For The Plaintiffs***