1    Robert B. Gerard, Esq. (Nevada State Bar #005323)
     Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
2    GERARD & ASSOCIATES
     2840 South Jones Boulevard
3    Building D, Suite #4
     Las Vegas, Nevada 89146
4    Telephone:    (702) 251-0093
     Facsimile:    (702) 251-0094
5

6    Kyle Nordrehaug, Esq. (California State Bar #205975)
     BLUMENTHAL & NORDREHAUG
7    2255 Calle Clara
     La Jolla, California 92037
     Telephone:    (858) 551-1223
8    Facsimile:    (858) 551-1232

9    Attorneys for Plaintiffs (Additional Attorneys on Signature Page)

10

11                **UNITED STATES DISTRICT COURT**

12                   **DISTRICT OF NEVADA**

13

14

15    WILLIAM SPRADLIN and SHIRLEY   )   CASE NO.: 2:08-cv-01428-KJD-RJJ)

16    SPRADLIN; EMMA ODUCA; SALLY KIM; )
     ELLIOT SPRUNG and DAVID SPRUNG;   )

17    TDF PROPERTIES, LLC; and KUNIKO   )   PLAINTIFFS' PETITION TO VACATE
     ISHIDA; individually and on behalf of all  )   PARTIAL FINAL ARBITRATION AWARD

18    persons similarly situated;           )

19                          )   Hearing Date:
             Plaintiffs,         )   Hearing Time:

20        vs.                    )

21                          )   Before:    Hon. Kent J. Dawson

22                          )
     TRUMP RUFFIN TOWER I LLC, a Delaware)

23    Limited Liability Company; and DOES 1   )
     through 100, inclusive,          )

24                          )

25              Defendants.        )

26

27

28

         PLAINTIFFS' PETITION TO VACATE PARTIAL FINAL ARBITRATION AWARD

1

## **<u>TABLE OF CONTENTS</u>**

2

3

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

II.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5

6

III. THE *STOLT-NIELSEN* DECISION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

IV.  CLASS ARBITRATION HERE IS CONSISTENT WITH NEVADA'S
     "DEFAULT RULE" WHICH PERMITS CONSOLIDATION OF ARBITRATION

8

     CLAIMS  UNLESS THE AGREEMENT PROHIBITS CONSOLIDATION . . . . . . . . . . 9

9

10

V.   THE ARBITRATOR IGNORED THE UNDISPUTED EVIDENCE OF THE
     PARTIES' INTENT AND EXPECTATIONS WHICH IS DETERMINATIVE

11

     UNDER *STOLT-NIELSEN* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

12

VI.  THE ARBITRATOR EXCEEDED HER AUTHORITY BY RULING ON THE ISSUE
     OF UNCONSCIONABILITY WITHOUT CONSIDERING THE FACTS OF THIS

13

     CASE THE TERMS OF THE ARBITRATION PROVISION OR THE IMPACT OF A

14

     "SILENT" CLASS ACTION WAIVER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15

      A.   Trump's Arbitration Provision is Unconscionable Because It Fails To Warn

16

           Purchasers that They Are Waiving Important Rights Under Nevada Law . . . . . . 20

17

      B.   The Arbitration Provision Is Procedurally Unconscionable Because the
           Arbitration Provision Was Inconspicuously Buried as a Subsection

18

           in the Miscellaneous Section on Page 13 of a 21-page Contract . . . . . . . . . . . . . 21

19

      C.   The Arbitration Provision Is Substantively Unconscionable When Applied to
           Plaintiffs' Claims Because the Fee Shifting Provision Only Assists Trump . . . . . 23

20

      D.   The Arbitration Provision Is Substantively Unconscionable Because the

21

           Prohibition on Punitive Damages Is Unconscionable . . . . . . . . . . . . . . . . . . . . . . 24

22

      E.   The Arbitration Provision Is Substantively Unconscionable Because the

23

           Confidentiality Provision Is One-Sided and Only Favors Trump . . . . . . . . . . . . . 26

      F.   The Arbitration Provision Is Substantively Unconscionable Because the

24

           Discovery Restrictions to Two Depositions Each Is a One-Sided Provision and
           Only Favors Trump . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

25

      G.   The Arbitration Provision Is Also y Unconscionable Because The Shifting

26

           of the Burden of Proof Under Nevada Securities Laws Is One-Sided in
           Favor of Trump . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

27

28

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

1

## **<u>TABLE OF AUTHORITIES</u>**

2

3 *Ashe v. Swenson,*
     397 U.S. 436 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4 *AT&T Mobility II v. Pestano,*
     2008 WL 682523 (N.D.Cal. March 7, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 27
5

6 *Acorn v. Household Intern., Inc.,*
     211 F.Supp.2d 1160  (N.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

7 *Alexander v. Anthony Int'l, L.P.,*
     341 F.3d 256, 267 (3rd Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
8

9 *Anvui, LLC v. G.L. Dragon, LLC,*
     123 Nev. 212, 215-16 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 16
10

11 *Booker v. Robert Half Int'l, Inc.,*
     315 F.Supp.2d 94, 103 (D.D.C.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

12 *Bradberry v. T-Mobile USA,*
     2007 WL 1241936 (N.D.Cal. August 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . 27
13

14 *Bragg v. Linden Research, Inc.,*
     487 F.Supp.2d 593 (E.D.Pa.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

15 *Burch v. Second Judicial Dist. Court,*
     118 Nev. 438 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11
16

17 *Circuit City Stores v. Adams,*
     279 F.3d 889 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 *Clark v. Lubritz,*
     113 Nev 1089; 944 P.2d 861 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
19

20 *Davis v. O'Melveny & Myers,*
     485 F.3d 1066 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 8, 9, 10, 23

21 *Delta Funding Corp. v. Harris,*
     912 A.2d 104 (N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
22

23 *Del Rio v. CreditAnswers, LLC,*
     2010 WL 2196587, *7 (S.D. Call. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

24 *D.R. Horton, Inc. v. Green,*
     120 Nev. 549 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
25

26 *Exber, Inc. v. Sletten Const. Co.,*
     92 Nev. 721 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

27 *Fisher v. DCH Temecula Imports LLC,*
     187 Cal.App.4th 601 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
28

*Fitz v. NCR Corp.*,
   118 Cal. App. 4th 702 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Gelow v. Cent. Pac. Mortg. Corp.*,
   560 F.Supp.2d 972, 981 (E.D. Cal.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Geiger v. Ryan's Family Steak Houses, Inc.*,
   134 F.Supp.2d 985 (S.D.Ind.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Green Tree Financial Corp. v. Bazzle*,
   539 U.S. 444 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*Gulledge v. Trinity Mission Health & Rehab of Holly Springs, LLC*,
   2007 WL 3102141 (D. Miss. October 22, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Hooters of America, Inc. v. Phillips*,
   39 F.Supp.2d 582 (D.S.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Ingle v. Circuit City Stores*,
   328 F.3d 1165 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9,  18, 19, 20, 24, 26

*Kinney v. United HealthCare Services, Inc.*
   70 Cal.App.4th 1322 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Knox v. Joe Gibson's Autoworld, Inc.*,
   2008 WL 2077361 (D.S.C. May 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Lowe Enterprises Residential Partners, L.P. v. Eighth Judicial Dist.*,
   118 Nev. 92, 100 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lowden v. T-Mobile, USA, Inc.*,
   2006 WL 1009279 (W.D.Wash April 13, 2006);
   *aff'd , Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008) . . . . . . . . . . . . . 20, 21

*Lucey v. FedEx Ground Package Sys.*,
   2007 WL 3052997 (D.N.J. October 17, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Luna v. Household Fin. Corp. IIII*,
   236 F. Supp. 2d 1166 (W.D.Wash 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Masto v. Second Judicial Dist. Court*,
   125 Nev. 5, 199 P.3d 828 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McCollum v. XCare.net, Inc.*,
   212 F.Supp.2d 1142 (N.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 19

*Nevada Food King, Inc. v. Reno Press Brick Co.*,
   81 Nev. 135 (1965).) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 16

*New Hampshire Ins. Co. v. Gruhn*,
   99 Nev. 771, 670 P.2d 941 (Nev. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Omstead v. Dell, Inc.*,
    594 F.3d 1081 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19

*Ontiveros v. DHL Express*,
    164 Cal. App.4th 494 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Openshaw v. FedEx Ground Package System, Inc.*,
    --- F.Supp.2d ----, 2010 WL 3257479 (C.D. Cal. Aug. 16, 2010) . . . . . . . . . . . . . . . . . . 24

*Ostroff v. Alterra Healthcare, Corp*,
    433 F.Supp.2d 538 (E.D.Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 27

*Pokorny v. Quixtar Inc.*,
    2008 WL 850358 (N.D.Cal. Mar 31, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Powertel v. Bexley*,
    743 So.2d 570 (Fla. App.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*SEC v. Ralston Purina Co.*,
    346 U.S. 119 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Siggelkow v. Phoenix Ins. Co.*,
    109 Nev. 42, 846 P.2d 303 (Nev. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*State ex rel. Dunlap v. Berger*,
    567 S.E.2d 265 (W.Va. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Stirlen v. Supercuts, Inc.*
    51 Cal.App.4th 1519 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    130 S.Ct. 1758 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Tandy Computer Leasing v. Terina's Pizza*,
    105 Nev. 841 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ting v. AT&T*,
    319 F.3d 1126 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 19, 24, 27

*Walker v. Ryan's Family Steak Houses, Inc.*,
    400 F.3d 370, 373, 387 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**Other Authority**

*Consolidation by State Court of Arbitration Proceedings Brought Under State Law*
    31 A.L.R.6th 433 §8 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

## I.   INTRODUCTION

The Arbitrator's ruling that the arbitration provision in this case does not allow arbitration of the class claims in this case is erroneous because it did not correctly apply the Supreme Court's recent decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758 (2010) ("Stolt-Nielsen"). Under *Stolt-Nielsen,* the silence of an arbitration provision on the issue of class actions creates an ambiguity, which must be resolved in accordance with the state law default rule regarding consolidation of arbitration claims and extrinsic evidence of the parties' intent. *Id.* at 773-74.

In this case, the Arbitrator's ruling cannot stand because it ignores Nevada's default rule favoring consolidation of arbitration claims. N.R.S. 38.224. See *Consolidation by State Court of Arbitration Proceedings Brought Under State Law* 31 A.L.R.6th 433 §8 (2008). The Arbitrator acknowledged that Nevada has a default rule allowing consolidation of claims in arbitration where the agreement is silent, but erroneously ruled that this default rule was irrelevant. See Partial Final Award on Claim Construction dated August 10, 2010 ("Partial Final Award") at pp. 15-16, lodged as Exhibit 1 to the Declaration of Robert Gerard, filed herewith. That ruling ignores the fact that *Stolt-Nielsen* held that arbitrators and the courts must look to the state default rule for **consolidation** of arbitration claims in deciding whether arbitration agreements should be construed as allowing arbitration of class claims. *Stolt-Nielsen*, 130 S.Ct at 1779. The Arbitrators' rejection of Nevada's default rule that arbitration claims may be consolidated absent an express contractual prohibition directly violates *Stolt-Nielsen* and requires that the award be vacated.

*Stolt-Nielsen* also held that whether an arbitration provision that is silent on the issue should be construed as allowing class actions depends on the extrinsic evidence of the parties' intent. "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control." 130 S.Ct. at 1773-74.   Despite *Stolt-Nielsen*'s holding that the intent of the parties controls, the Arbitrator ignored the uncontradicted evidence that both Trump Ruffin Tower I LLC ("Trump") and Plaintiffs understood

and intended that class actions arbitrations would be allowed under the arbitration provision.

Plaintiffs submitted direct evidence that they intended, reasonably understood, and expected that class arbitration would be permitted in this case. See Declaration of William Spradlin ¶3; Declaration of Elliot Sprung ¶3; and Declaration of David Sprung ¶3 , lodged herewith as Exhibits 2, 3 and 4 to the Gerard Declaration. This evidence is uncontroverted.

Trump, in drafting the arbitration provision, manifested Trump's intent to allow class arbitration, under the principle of *expressio unius*, by expressly prohibiting punitive damages and otherwise expressly restricting Claimant's procedural rights, without also expressly taking away the right to class litigation. *Nevada Food King, Inc. v. Reno Press Brick Co.*, 81 Nev. 135, 138 (1965). *See* the Trump International Hotel and Tower Las Vegas Condominium Purchase and Sales Agreement ( "Purchase Agreement") p.13, ¶ 25.10, lodged as Exhibit 5 to the Gerard Declaration

Even more significantly, Trump's contemporaneous conduct shows that Trump specifically prohibited class arbitration when and if Trump intended that class arbitration should not be allowed. Trump's Rental Contract, which Trump expected each of the Claimants to sign, and which was also drafted by Trump, includes an express class action waiver. See Trump International Hotel & Tower Las Vegas Condominium Hotel Rental Management Agreement ("Rental Contract") page 21, ¶9.7, lodged herewith as Exhibit 6 to the Gerard Declaration.   Thus, Trump's own custom and practice was  to expressly prohibit class action arbitrations where Trump does not intend to permit class arbitration, which further supports Claimants' reasonable expectation that class arbitration is permitted for disputes like this one arising under the Purchase Contract unlike disputes arising under the Rental Contract.

Trump's failure to submit any declaration or other evidence that Trump intended that arbitration of class actions would not be allowed under the Agreement is unsurprising because the evidence here shows that Trump could not possibly have had such an expectation.  Respondent knowingly selected the AAA as the arbitral venue after *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003) was decided and after AAA arbitrators had issued a series of interlocutory awards consistently ruling that class arbitration was allowed where the contract was silent on the issue.

1  Trump's attorneys, who drafted the arbitration provision in the Agreement offer no evidence or

2  assertion that they were unaware of these arbitral decisions when the Agreement was executed.

3       Indeed, in light of these publicly-available AAA decisions, Trump could not possibly have

4  expected that class arbitration would be prohibited by the AAA arbitrator deciding the issue.  Trump

5  does not and cannot dispute that, by the time the Agreement was executed, the AAA had essentially

6  developed its own default rule permitting class arbitration where the agreement was silent and that

7  Trump knew, or should have known, this when it chose AAA arbitration in an arbitration provision

8  silent on the class issue.  Accordingly, the Arbitrator's decision is contrary to *Stolt-Nielsen*, which

9  requires analysis of the parties' intent under the state law governing contract construction in deciding

10  whether arbitration of class claims should be allowed where the agreement is silent.

11       The Arbitrator also summarily and erroneously ruled that the arbitration provision was not

12  unconscionable, despite her construction of the arbitration provision as silently prohibiting class

13  actions.  The Arbitrator based her determination that the provision was not unconscionable on the

14  Nevada Supreme Court's unpublished order in *KJH v. Turnberry/Mgm Grand Towers*, 2009 WL

15  1455992 (Table) (Nev. April 22, 2009) a case involving different parties none of whom asserted that

16  the arbitration provision's silence on the issue prevented arbitration of class claims.[1]

17       The Arbitrator erroneously decided the issue of unconscionabilty based solely on the facts

18  of *KJH*, rather than the facts of this case.   Analysis of procedural unconscionability requires

19  examination of the negotiation of the contract at issue – not the negotiation of some other contract

20  in another case. To "determine whether the arbitration agreement is procedurally unconscionable the

21  **court must examine the manner in which the contract was negotiated and the circumstances**

22  **of the parties at that time**."   *Ingle v. Circuit City Stores*, 328 F.3d 1165, 1171 (9th Cir. 2003)

23  ("*Ingle*").[2]

24       *KJH* ruled that the arbitration provision in that case was not procedurally unconscionable

25

26       [1] The Arbitrator exceeded her authority by citing and relying on *KJH* as precedent because
27  the unpublished order provides that it "**shall not be regarded as precedent and shall not be cited**
   **as legal authority**." 2009 WL 1455992 at *1.

28       [2] Emphasis added and internal citations omitted unless otherwise stated.

based on the manner that the contract in that case was negotiated, finding that the contract was not presented on a take-it-or-leave-it-basis and that the "the arbitration clauses at issue here were negotiable." 2009 WL 1455992 at *1. Here, in sharp contrast to *KJH*, the evidence is undisputed that the Purchase Agreement here was presented to Plaintiffs on a take-it-or leave-it basis and that Trump did not allow any change in the provisions. Moreover, the Purchase Agreement was procedurally unconscionable because it failed to advise prospective purchaser's that they would be waiving their right under Nevada law to bring class actions. As the Nevada Supreme Court held in *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 558-9 (2004) ("*D.R. Horton*"), an arbitration provision in a real estate sales contract is procedurally and substantively unconscionable where it is "inconspicuous, one-sided and **failed to advise the real estate purchaser that significant rights under Nevada law would be waived by agreeing to arbitration.**" *D.R. Horton*, 120 Nev. at 558-59.   Procedural unconsiconability depends on surprise and oppression.  Here, oppression existed because the parties had unequal bargaining power and the contract was presented on a take- it-or-leave-it basis.  An arbitration provision with a "stealth" waiver of the right to arbitrate as a class and of other important legal rights also has the element of surprise under Nevada law.

The arbitration provision in the Purchase Agreement is also substantively unconscionable.[3] The Ninth Circuit and California courts, which Nevada courts follow in determining unconscionability have found class action waiver to be  substantively unconscionable and to render the entire arbitration provision.  *Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal.2005); *Omstead v. Dell, Inc.*, 594 F.3d 1081 (9th Cir. 2010) ("the class action waiver renders the entire arbitration provision unenforceable"); *Ingle.*, 328 F.3d at 1180; *Ting v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003); *Del Rio v. CreditAnswers, LLC*,  2010 WL 2196587, *7 (S.D. Call. 2010).   The Arbitrator's finding of a silent class action waiver in this case, combined with the numerous other one-sided provisions in the arbitration provision which have been ruled unconscionable by the Nevada Supreme Court compels a finding of procedural unconscionability.

The Arbitrator ignored the evidence of the manner in which the Purchase Agreement was

---

[3] Based on its finding that there was no procedural unconscionabilty under the facts in that case, *KJH* never addressed the issue of substantive unconscionability. 2009 WL 1455992 at *2.

1   negotiated and the one-sided substantive terms of the arbitration provision and erroneously ruled that

2   unconscionability analysis did not apply because the purchasers were real estate purchasers rather than

3   consumers.  That ruling is directly contrary to *D.R. Horton*, 120 Nev. at 558-59 which held that under

4   Nevada law unconscionability was not limited to consumer contracts and that the real estate purchase

5   contract in that case was both procedurally and substantively unconscionable.  120 Nev. at  558-9,

6   See also *Burch v. Second Judicial Dist. Court*, 118 Nev. 438 (2002);  *Nagrampa v. MailCoups, Inc.*,

7   469 F.3d 1257, 1283 (9th Cir. 2006) ("the sophistication of a party, alone, cannot defeat a procedural

8   unconscionability claim.")

9        Accordingly, Plaintiffs respectfully submit that the Partial Final Award exceeded the

10  Arbitrator's authority and manifestly disregarded the controlling law and should therefore be vacated.

11

12  **II.   STANDARD OF REVIEW**

13       The Arbitrator has stayed the Arbitration pursuant to Rule 3 of the AAA Class rules to allow

14  either party to seek review by this Court vacating or confirming the Partial Final Award.  Partial Final

15  Award at p. 18.  In *Stolt-Nielsen* the Supreme Court addressed the same "gateway matter" of whether

16  the arbitration could proceed as a class action that is at issue in this case.  The Supreme Court, before

17  ruling on the merits, held that the courts have jurisdiction to decide this gateway issue because "under

18  the FAA, a party to an arbitration agreement may petition a United States district court for an order

19  directing that 'arbitration proceed in the manner provided for in such agreement." 130 S. Ct. at 1773,

20  quoting Federal Arbitration Act, 9 U.S.C. § 4.

21       *Stolt-Nielsen* held that the agreements of the parties, ascertained by the parties' intent, is

22  paramount and that, when an arbitrator ignores the parties' agreement, the arbitrator exceeds its

23  power.  As the Supreme Court explained, because arbitration is matter of consent, an arbitrator's

24  power is all derived from and defined by the parties agreement.  Accordingly, an arbitration decision

25  contrary to the parties' agreement "exceeded [his] powers" *Id.* at 1776.  9 U.S.C. §10(a)(4) authorizes

26  a district court to "make an order vacating the award upon the application of any party to the

27  arbitration ... where the arbitrators exceeded their powers." *Id.*    Where, as here, the Arbitrator

28

"exceeded its powers", the Court has the power under § 10(a)(4) of the FAA to reverse this error.[4]

     *Stolt-Nielsen* represents a sea change in the law governing judicial review of arbitrations as the Supreme held that where the arbitrator fails to correctly enforce the agreement of the parties regarding class arbitration, immediate judicial review of the interlocutory gateway arbitration decision is appropriate.  Consistent with this ruling, there can be no doubt that this Court has the jurisdiction and power to issue an order vacating the Partial Final Award.[5]

## III     THE *STOLT-NIELSEN* DECISION

     In *Stolt-Nielsen*, the United States Supreme Court held that class arbitration was not permitted under an arbitration provision in  a "charter party" standardized maritime commercial contract covering the shipment of certain goods negotiated among highly sophisticated commercial parties. In *Stolt-Nielsen*, the charter party contract was not drafted by either party and was not a consumer or investment contract.  The charter contract was one of many standard maritime shipping agreements selected at arms length by commercial parties. The charter agreement was not a contract of adhesion unilaterally imposed on Animalfeeds, the party who later brought an antitrust class action against Stolt-Nielsen S.A. and other commercial shippers. Indeed, the Supreme Court noted that the plaintiff, Animalfeeds, was the contracting party who chose the governing charter party contract. 130 S.Ct. at 1764.

     Animalfeed subsequently brought an antitrust action against Stolt-Nielsen S.A. and other shipping companies.  After, the defendants arbitration successfully moved to compel arbitration, Animal Feed filed a demand for class arbitration and the issue of class arbitration was briefed and

---

[4] Nevada law, which governs the agreement, provides that any award made in an arbitral proceeding may be vacated by the court if the "arbitrator exceeded his powers." N.R.S. § 38.241 (1)(d).

[5] The Supreme Court declined to rule on whether "manifest disregard" of the law is  an independent grounds for vacating an arbitration award but held that "[a]ssuming, arguendo, that such a standard applies, we find it satisfied." 130 S. Ct. at 1768, n. 3. The "manifest disregard" standard is satisfied in this case for the same reasons as in Stolt-Nielsen: the Arbitrator failed to apply the state law default rule and ignored the undisputed evidence of the parties' intent.

argued by the parties pursuant to Rule 3 of the AAA's Supplementary Rules for Class Arbitrators ("Class Rules"). *Id.* at 1765-66.

At the hearing the shippers presented "undisputed evidence that the Vegoilvoy charter party [contract] had 'never been the basis of a class action....'" *Id.* at 1769. The shippers also proffered uncontradicted expert opinion evidence that "sophisticated, multinational commercial parties of the type that are sought to be included in the class would never intend that the arbitration clauses would permit a class arbitration." *Id.* The shippers further demonstrated that case law had consistently denied consolidation of arbitrations where the agreement was silent and that "these decisions were available to the parties when they entered into their contracts." Id. at 1769 and .n. 5.

The Supreme Court in *Stolt-Nielsen*, reaffirmed the fundamental rule that the ultimate touchstone for interpreting an arbitration contract, including an arbitration contract that was silent on the issue of whether class actions were allowed was the intent of the parties who negotiated the contract. *Id.* at 1774. The Court also reaffirmed the rule that the arbitration provision's silence about class action created an ambiguity, which presented a question of fact which had to be resolved on a case-by-case basis under the applicable state law principles of contract construction, which in *Stolt-Nielsen* was New York and maritime law. "Under both New York law and general maritime law, evidence of "custom and usage" is relevant to determining the parties' intent when an express agreement is ambiguous. *Id.* at 1769, n. 6.

As a result, applying New York and maritime law to resolve the contractual ambiguity, the Supreme Court held that the arbitration clause between merchants was only intended by them to apply to bilateral commercial disputes as there was no evidence that either merchant intended or expected the arbitration provision to apply to class actions when the contract was signed.

As the Supreme Court held, the contract's silence regarding class-wide arbitration created an ambiguity and "[u]nder both New York law and general maritime law, evidence of "custom and usage" is relevant to determining the parties' intent when an express agreement is ambiguous." *Id.* at 1769, n. 6. The arbitrators in *Stolt-Nielsen* therefore erred in ruling that class arbitration was permitted because they failed to apply New York law and maritime law requiring analysis of "custom and usage" to resolve the ambiguity where there was no direct evidence of the parties intent

1  and because they ignored the undisputed custom usage evidence, that class arbitration had never been

2  allowed under this standard contract.  *Id.* .

3  Animalfeeds presented no evidence that class litigation was expected or intended by either

4  party, which intention would have been contrary to the well-established industry custom and

5  prevailing admiralty law.  In fact the parties stipulated that there was not agreement on class

6  arbitration. "Counsel for AnimalFeeds explained to the arbitration panel that the term 'silent' did not

7  simply mean that the clause made no express reference to class arbitration. Rather, he said, '**[a]ll the**

8  **parties agree that when a contract is silent on an issue there's been no agreement that has been**

9  **reached on that issue**.'" *Id.* at 1766.

10  The Supreme Court held that because the parties had stipulated that there was not agreement

11  to arbitrate class claims the Arbitrator should have determined the default rule governing arbitration

12  provisions where the parties had reached no agreement on the issue:

13  Because the parties agreed their agreement was "silent" in the sense that they had not
    reached any agreement on the issue of class arbitration, the **arbitrators' proper task**
14  **was to identify the rule of law that governs in that situation.** Had they engaged in
    that undertaking, they presumably would have looked either to the FAA itself or to
15  one of the two bodies of law that the parties claimed were governing, i.e., either
    federal maritime law or New York law.
16

17  *Id.* at 1768.

18  The Supreme Court held that to identify this governing rule of law, the arbitrators should have

19  looked to "**court cases denying consolidation of arbitrations**." *Id.* at 1769.

20  Ignoring the default rule governing consolidation of claims where the arbitration provision

21  was silent, the panel instead relied on AAA awards allowing class-wide arbitration of consumer cases

22  where the arbitration provision was silent and "[p]erceiving a post- *Bazzle* consensus among

23  arbitrators that class arbitration is beneficial in "a wide variety of settings," the panel considered only

24  whether there was any good reason not to follow that consensus in this case." *Id.* at 1769.

25  As the Supreme Court observed, the panel's reliance on these post-*Bazzle* arbitral decisions

26  confirmed that "**the panel's decision was not based on a determination regarding the parties'**

27  **intent**" because all of these arbitral awards were issued after the parties had entered into the charter

28  party contracts. *Id.* at 1768 and n. 4.

The *Stolt-Nielsen* decision is clear that the requirement that the ambiguity of an arbitration clause must be resolved under state law which requires case-by-case analysis. Accordingly, while the panel in *Stolt-Nielsen* had erroneously assumed that class arbitration was always permitted under *Bazzle* where the contract was silent, it would be equally erroneous to argue that silence means that class arbitration is never the parties' intent. As the Supreme Court noted, in other cases where the contract is silent there may be a contractual basis to "support a finding that the parties agreed to authorize class-action arbitration." *Id.* at 1776, n. 10.

This is a case where both the actual intent of the parties, the applicable Nevada law governing construction of ambiguous contracts, and the Nevada default rule allowing consolidation of arbitration claims where the contract is silent all compel a finding that the parties agreement to arbitrate was intended to include class arbitration.

The charter party contract in *Stolt-Nielsen* was not a contract of adhesion because the contract was negotiated among sophisticated commercial companies and was selected by the plaintiff, Animalfeeds. The Trump agreement, on the other hand, was drafted by Trump and imposed on Claimants on a take-it-or-leave it basis without any opportunity to negotiate. See  Decl. Spradlin ¶4; Decl. Elliot Sprung ¶4 and  Decl. David Sprung ¶4. (Decl. Gerard Exhibits 2-4).  Nevada law therefore  requires the ambiguity to be resolved against Trump, as the drafting party, in accordance with the intent of the parties and the surrounding circumstances. *Anvui, LLC v. G.L. Dragon, LLC,* 123 Nev. 212, 215-16 (2007).

## IV.   CLASS ARBITRATION HERE IS CONSISTENT WITH NEVADA'S "DEFAULT RULE" WHICH PERMITS CONSOLIDATION OF ARBITRATION CLAIMS UNLESS THE AGREEMENT PROHIBITS CONSOLIDATION

In *Stolt-Nielsen*, the Supreme Court ruled that where an arbitration agreement is silent regarding class arbitration, the arbitrator must look to the applicable state law "default rule" governing consolidation of arbitration claims.  130 S.Ct at 1768-69.  Finding that class arbitration is subject to the rules governing   claims consolidation, the Supreme Court relied on a   default rule against

**consolidation** of arbitration claims in holding that class arbitration was not allowed in that case. *Id.*[6] In non-admiralty cases like this one, where the Agreement states that it is governed by Nevada law and the arbitration agreement is silent, the arbitrator must look to the Nevada default rule governing arbitration claims consolidation.

Nevada's 'default rule' is codified in N.R.S. 38.224 which provides:

1. Except as otherwise provided in subsection 3, upon motion of a party to an agreement to arbitrate or to an arbitral proceeding, **the court may order consolidation of separate arbitral proceedings as to all or some of the claims** if:

    (a) There are separate agreements to arbitrate or separate arbitral proceedings between the same persons or one of them is a party to a separate agreement to arbitrate or a separate arbitral proceeding with a third person;

    (b) **The claims subject to the agreements to arbitrate arise in substantial part from the same transaction or series of related transactions;**

    (c) **The existence of a common issue of law or fact** creates the possibility of conflicting decisions in the separate arbitral proceedings; and

    (d) Prejudice resulting from a failure to consolidate is not outweighed by the risk of undue delay or prejudice to the rights of or hardship to parties opposing consolidation.

2. The court may order consolidation of separate arbitral proceedings as to some claims and allow other claims to be resolved in separate arbitral proceedings.

3. **The court may not order consolidation of the claims of a party to an agreement to arbitrate if the agreement prohibits consolidation.**[7]

N.R.S. 38.224 clearly provides that consolidation of arbitral claims may be ordered unless "the agreement prohibits consolidation." Since the Agreement here does no prohibit consolidation, the

---

[6] The Supreme Court held that the arbitrators erred by failing to determine "whether the FAA, maritime law, or New York law contains a "default rule" under which an arbitration clause is construed as allowing class arbitration in the absence of express consent, the panel proceeded as if it had the authority of a common-law court to develop what it viewed as the best rule to be applied in such a situation. *Id.* at 1768-69. To determine the "default rule", the Supreme Court ruled that the Arbitrators should have followed "court cases denying **consolidation** of arbitrations" which "decisions were available to the parties when they entered into their contracts." *Id.* at 1769 and n. 5.

[7] Emphasis added unless otherwise stated.

1  Nevada default rule applies and consolidated class arbitration must be allowed.

2      In *Exber, Inc. v. Sletten Const. Co.*, 92 Nev. 721, 731-32(1976) the Nevada Supreme Court

3  held that arbitration claims could be consolidated where the arbitration provision was silent on the

4  issue. *Consolidation by State Court of Arbitration Proceedings Brought Under State Law* 31

5  A.L.R.6th 433 §8 (2008) identifies Nevada as among the states with a default rule allowing

6  consolidation where agreement is silent, citing *Exber, Inc. v. Sletten Const. Co.*[8]

7      N.R.S. 38.224 provides the default rule applicable in this case. N.R.S. 38.224 allows

8  consolidation of claims and permits consolidated class arbitration where, as here, it is not specifically

9  prohibited in the Agreement. As a result, this default rule distinguishes this case from

10 *Stolt-Nielsen* and here requires class-wide arbitration.

11     The Arbitrator acknowledged that Nevada has a default rule allowing consolidation of claims

12 in arbitration where the agreement is silent, but erroneously ruled that this default rule was irrelevant

13 because class certification were different from consolidation of claims. See Partial Final Award at pp.

14 15-16. That ruling ignores the fact that the *Stolt-Nielsen* decision requires arbitrators and the courts

15 to look to the state default rule for **consolidation** of arbitration claims in deciding whether arbitration

16 agreements should be construed as allowing arbitration of class claims. *Stolt-Nielsen S.A.*, 130 S.Ct

17 at 1773. The Supreme Court also acknowledged that the default rule for consolidation of arbitration

18 claims was analogous authority relevant to the issue of arbitration of class claims in *Southland Corp.*

19 *v. Keating*, 465 U.S. 1,(1984)

20     The California Supreme Court cited **"[a]nalogous authority" supporting**
**consolidation of arbitration proceedings by federal courts**. E.g., Compania
21 Espanola de Petroleos, S.A. v. Nereus Shipping, S.A., 527 F.2d 966, 975 (CA2 1975),

22

23     [8] By enacting N.R.S. 38.224, the Nevada legislature has thus created an identifiable default
rule allowing consolidation of arbitration claims unless a contrary intent is expressed in the
24 arbitration agreement. This Nevada default rule requires a different result than in *Stolt-Nielsen*
where the Supreme Court relied on case law prohibiting consolidation of claims where the agreement
25 was silent. Because the Agreement here does not express any intent to prohibit class actions, the
Nevada default rule is controlling. **Nevada's default rule for silent arbitration agreements is**
26 **consistent with Nevada's broader rule presuming that a party does not intend to silently waive**
**judicial rights and remedies absent express language to the contrary**. *See Lowe Enterprises*
27 *Residential Partners, L.P. v. Eighth Judicial Dist.*, 118 Nev. 92, 100 (2002) (contractual waiver of
28 right to jury trial must be clear and entered into knowingly, voluntarily and intentionally).

cert. denied, 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); In re Czarnikow-Rionda Co., 512 F.Supp. 1308, 1309 (SDNY 1981). This, along with support by other state courts and the California legislature for **consolidation of arbitration proceedings permitted the court to conclude that class action proceedings were authorized**.

Id. at 9, n.4 quoting, *Keating v. Superior Court*, 645 P.2d 1192, 1209 (Cal. 1982).[9]

Courts follow the analogous default rule for consolidation of arbitration claims in determining the default rule for arbitration of class claims because class certification is a form of claim consolidation. See *Ashe v. Swenson*, 397 U.S. 436, 456 (1970) ("Rule 23 permits the consolidation of separate claims in a class action").

Here the Arbitrator's refusal to follow Nevada's default rule for consolidation of arbitration claims is contrary to *Stolt-Nielsen* which expressly requires arbitrators to determine and follow state law default rules for consolidation of arbitration claims.[10]

## V.   THE ARBITRATOR IGNORED THE UNDISPUTED EVIDENCE OF THE PARTIES' INTENT AND EXPECTATIONS WHICH IS DETERMINATIVE UNDER *STOLT-NIELSEN*

As *Stolt-Nielsen* held, that the ultimate touchstone for interpreting an arbitration agreement was the intent and expectation of the parties to the contract. *Stolt-Nielsen* reaffirmed the rule that the touchstone for arbitration clause construction is the intent and expectations of the parties:

Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts

---

[9] Although the Supreme Court reversed the California Supreme Court's decision in *Southland* in part on other grounds, it did not disagree with the California's Supreme Court's reliance on the authority allowing consolidation of arbitration claims where the agreement was silent in holding that the California default rule allowed class actions where the arbitration agreement was silent.

[10] The Arbitrator found that Nevada's default rule for consolidation of arbitration claims did not govern arbitration of class claims because "the Nevada statute on which Claimants rely gives the power to consolidate separate arbitrations to the court under specifically enummerated circumstances." Award at p. 16.  These enummerated circumstances, which include "[t]he existence of a common issue of law or fact" are fully consistent with the requirements for class certification under Rule 23 of the Nevada Rules of Civil Procedure. Any concern by the Arbitrator that N.R.S. 38.224 only empowers the court not arbitrators to consolidate claims where the agreement is silent is misplaced because here the Arbitrator has the same power as a court to apply Nevada law, including N.R.S. 38.224. See Agreement ¶ 25.10.

and arbitrators must "**give effect to the contractual rights and expectations of the parties.**" *Volt*, supra, at 479, 109 S.Ct. 1248. **In this endeavor, "as with any other contract, the parties' intentions control.**" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).

*Id.* at 1773-74. Under Nevada law the fundamental goal of contract interpretation is also to "effectuate the intent of the parties" *Anvui, LLC v. G.L. Dragon, LLC*, 123 Nev. 212, 215 (2007). *Stolt-Nielsen* reaffirmed the rule that the arbitration provision's silence about class action created an ambiguity, which presented a question of fact which had to be resolved on a case-by-case basis under the applicable state law principles of contract construction.   103 S. Ct.. at 1768-69 and n. 6.

Here, the evidence that the parties intended and expected that class-wide arbitration would be allowed under the agreement is overwhelming and there is no evidence indicating any contrary intent by either party. Here Claimants intended and reasonably expected that the arbitration clause encompassed class litigation.  See Decl. Spradlin ¶3; Decl. Elliot Sprung ¶3 and Decl. David Sprung ¶3.[11]   While Plaintiffs submitted declarations stating that they understood and expected that the agreement to arbitrate included class actions, Trump  failed to offer any evidence that Trump had any contrary intent.

Moreover, Trump's contemporaneous conduct shows that Trump could and did specifically prohibit class arbitration when and if Trump intended that class arbitration should not be allowed. Trump's Rental Contract, which Trump expected  each of the Claimants to sign, and which was also drafted by Trump, importantly includes an express class action waiver. See Decl. Gerard, Exhibit 5, page 21, ¶9.7.  Thus Trump's own custom and practice is to expressly prohibit class action arbitrations

---

[11] Plaintiffs' understanding and expectation that the Agreement allows for class arbitration is further evidenced by the fact that they would not have stipulated to arbitration of the class action they had pending in federal court had they known that class actions could not be arbitrated under the Agreement. The terms of the stipulation show that Claimants agreed to stay their federal court class action until the Nevada Supreme Court decided  the issue of whether the identical arbitration clause in the MGM litigation was unconscionable.  Claimants subsequently agreed to arbitration after the Nevada Supreme Court held that the arbitration provision was not unconscionable in a case where MGM had already conceded that class arbitration was permitted in the related federal class action litigation.  Thus the stipulation further demonstrates that Claimants would not have stipulated to arbitration of their class action if they had known that Trump would later argue that the Agreement prohibits class actions but would have instead opposed arbitration in federal court on the grounds of unconscionability.

PLAINTIFFS' PETITION TO VACATE PARTIAL FINAL ARBITRATION AWARD

1   where Trump does not intend to permit class arbitration, which further supports Claimants' reasonable

2   expectation that class arbitration is permitted for disputes like this one arising under the Purchase

3   Contract unlike disputes arising under the Rental Contract. Trump's inclusion of a class action waiver

4   in the Rental Contract but not in the Agreement manifests an objective intent to agree to arbitrate class

5   actions under the Agreement and also supports Claimants' expectation that class litigation would be

6   allowed.[12]

7          Trump's inability to submit any declaration or other evidence that Trump expected that

8   arbitration of class actions would not be allowed under the Agreement is unsurprising because the

9   evidence here shows that Trump could not possibly have had such an expectation. Trump knowingly

10  selected the AAA as the arbitral venue after *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444

11  (2003) was decided and after AAA arbitrators had issued a series of interlocutory awards consistently

12  ruling that class arbitration was allowed where the contract was silent on the issue. Trump's attorneys,

13  who drafted the arbitration provision in the Agreement and in the MGM agreement offer no evidence

14  or assertion that they were unaware of these arbitral decisions when the Agreement was executed.

15         **Indeed, in light of these publicly-available AAA decisions, Trump could not possibly**

16  **have expected that class arbitration would be prohibited by the AAA arbitrator deciding the**

17  **issue**. Trump does not and cannot dispute that, by the time the Agreement was executed, the AAA had

18  essentially developed its own default rule permitting class arbitration where the agreement was silent

19  and that Trump knew, or should have known, this when it chose AAA arbitration in an arbitration

20  provision silent on the class issue.[13]

21  _____

22         [12] Recognizing, that no evidence of intent or expectation supports Trump's position, Trump

23  argued that the Agreement is not ambiguous and that extrinsic evidence must therefore be ignored.
    That argument is belied by *Stolt-Nielsen* which ruled that an arbitration agreement silent on the issue

24  of class-wide arbitration was ambiguous and therefore considered evidence of the parties' intent and
    expectations under New York law. 2010 WL 1655826 at *11. Trump's position is also belied by

25  the MGM litigation where both MGM and the federal magistrate construed the same arbitration
    agreement to permit class-wide arbitration, showing that the language is reasonably susceptible to

26  that interpretation. See *Masto v. Second Judicial Dist. Court*, 125 Nev. 5, 199 P.3d 828, 832 (2009).

27         [13] In *Stolt-Nielsen*, the AAA decisions consistently permitting class arbitration where the

28  agreement was silent were irrelevant to the intent or expectations of the contracting parties because
    they all **post-dated** the contract in that case. 2010 WL 1655826 at *7-*8. Here, these AAA

**Trump's true expectations and intent is also glaringly obvious from Trump's use of language prohibiting class arbitrations in the Rental Agreement that was to be part of the same transaction as the Agreement.** This language shows that Trump was aware of and used a class action waiver when Trump intended arbitration agreements not to include class actions. Trump's only response was to claim that its own conduct is irrelevant because the two contracts were not executed contemporaneously. Trump does not deny, however, that these two contracts were part of the same transaction and offer no evidence that they were not drafted by Trump contemporaneously as is its burden.

Trump failed to explain why the interval between the signing of the Agreement and the signing of the Rental Agreement is relevant to Defendants' intent. In other words, Trump was unable to explain how Trump could possibly have expected that the Agreement's silence on the issue would prohibit class arbitrations when the Agreement was signed but then deemed it necessary to include express language prohibiting class arbitration in the Rental Agreement. In truth, the language of the **Rental Agreement** is a glaring admission by Trump proving that Trump understood and intended that class arbitration would be permitted here unless expressly prohibited in the contract.[14]

The language of the arbitration provision also supports the parties' expectation that class-wide arbitration was part of the agreement. Trump also manifested the intent that the arbitration agreement include class arbitration. Here, the Agreement expressly provides that the parties, in agreeing to

---

decisions **already existed** and certainly informed the expectations of Trump and its attorneys. This state of the law at AAA stands in sharp contrast to the maritime case law consistently prohibiting consolidated arbitrations in *Stolt-Nielsen*.

[14] Nevada law requires ambiguities to be construed against the drafting party. *Anvui, LLC v. G.L. Dragon, LLC, supra*, 123 Nev. at 215-216. Trump, as the drafting party, claims to have avoided this fundamental rule of Nevada law by providing that "Notwithstanding that this Agreement was prepared by one party hereto, it shall not be construed more strongly against or more favorably for either party." Agreement ¶ 41. That provision, which is based on the false recital that "both parties have equal bargaining power" and "equal business acumen" also drafted by Trump, is unenforceable because the Agreement was imposed on Claimants on a take-it-or-leave-it basis. In any case, the Nevada default rule and the evidence that the parties' expected and intended class arbitration in this case are so powerful that the rule that ambiguities must be construed against the drafter is not even necessary in this case.

1    arbitrate, gave up certain enumerated rights such as the right to seek punitive damages and the right
2    to unlimited discovery. Agreement ¶ 25.10. The fact that the right to bring a class action was not
3    included among such-expressly waived rights further compels a finding that Trump intended to agree
4    to class arbitration under the doctrine of ***expressio unius est exclusio alterius***. See *Nevada Food*
5    *King, Inc. v. Reno Press Brick Co.*, *supra*, 81 Nev. 135, 138 (1965).

6         The Agreement broadly requires arbitration of "any dispute related to this Agreement
7    (including, but not limited to the interpretation of enforceability of this Agreement)." Agreement ¶
8    25.10.[15] The Agreement also provides that the "arbitrator shall have the authority to award any remedy
9    of relief that a court of the State of Nevada could grant in conformity to the applicable law except that
10   the arbitrator shall have no authority to award punitive damages. *Id.* That broad grant of authority
11   gives the arbitrator the same remedial powers as a Nevada court, which necessarily includes the power
12   to adjudicate class actions and grant class-wide remedies. The language providing that punitive
13   damages are not allowed, supports the expectation that only legal rights and remedies specified in the
14   agreement will not be allowed in arbitration – and the class action remedy is not mentioned.

15        Thus, both the direct evidence of Claimants' intent and expectation and the strong
16   circumstantial showing that all parties understood that class-wide arbitration would be permitted under
17   the Agreement also compels construction of the Agreement as allowing class-wide arbitration

18        The *Stolt-Nielsen* Court's factual determination that the parties in that case could not possibly
19   have expected or intended that their arbitration agreement would include class actions was based on
20   evidence that "sophisticated, multinational commercial parties of the type that are sought to be
21   included in the class would never intend that the arbitration clauses would permit a class arbitration."
22   2010 WL 1655826 at *8. The shippers further demonstrated that case law had consistently denied
23   consolidation of arbitrations and that "these decisions were available to the parties when they entered

---

[15] Trump argues that this broad arbitration provision is entitled to no weight because the
arbitration provision in *Stolt-Nielsen* also applied to "any dispute." In *Stolt-Nielsen*, however, unlike
this case, the Court never addressed that language because the plaintiff did not assert that it expected
or intended that class-wide litigation would be allowed based on the language of the arbitration
provision. Here claimants reasonably understood that "any dispute" included class action disputes.
See Decl. William Spradlin ¶3; Decl. Elliot Sprung ¶3; Decl. David Sprung ¶3.

into their contracts." Id. at *8 and f.n. 5.

As a result, in *Stolt-Nielsen* the plaintiff did not and could not offer any evidence that class litigation was expected or intended by either party, because such evidence would have been contrary to the well-established industry custom and prevailing admiralty law. In fact, in *Stolt-Nielsen* the plaintiff actually admitted that there had been no agreement to arbitrate class actions. *Id.* at *5. Here, by contrast, Plaintiffs have never stipulated or admitted that there was no agreement to arbitrate class claims. Plaintiffs proffered declarations stating that they understood and expected that the agreement to arbitrate included class actions and Trump has failed to offer any evidence that Trump had any contrary intent.[16] The Arbitrator exceeded her authority by disregarding the undisputed evidence.

## VI. THE ARBITRATOR EXCEEDED HER AUTHORITY BY RULING ON THE ISSUE OF UNCONSCIONABILITY WITHOUT CONSIDERING THE FACTS OF THIS CASE THE TERMS OF THE ARBITRATION PROVISION OR THE IMPACT OF A "SILENT" CLASS ACTION WAIVER

The Arbitrator based her determination that the provision was not unconscionable on the Nevada Supreme Court's decision in *KJH* a case involving different parties none of whom asserted that the arbitration provision's silence on the issue prevented arbitration of class claims. The Arbitrator exceeded her authority by citing and relying on *KJH* as precedent because the unpublished order provides that it "**shall not be regarded as precedent and shall not be cited as legal authority.**" 2009 WL 1455992 at *1.

The Arbitrator exceeded her authority by deciding the issue of unconscionabilty based solely on the facts of a different case. Analysis of procedural unconscionability requires examination of the negotiation of the contract at issue – not the negotiation of some other contract in another case.  To "determine whether the arbitration agreement is procedurally unconscionable the **court must examine the manner in which the contract was negotiated and the circumstances of the parties at that**

---

[16] Trump offered  no declaration from any party or witness and instead relied solely on the argument of its attorneys, which is not evidence.

1  time." *Ingle*, 328 F.3d at 1171.[17]

2       *KJH* ruled that the arbitration provision in that case was not procedurally unconscionable

3  based on the manner that the contract in that case was negotiated, finding that the contract was not

4  presented on a take-it-or-leave-it-basis and that the "the arbitration clauses at issue here were

5  negotiable." 2009 WL 1455992 at *1. Here, in sharp contrast to *KJH*, the evidence is undisputed

6  that the Purchase Agreement here  was presented to Plaintiffs on a take-it-or leave-it basis and that

7  Trump did not allow any change in the provisions.  Courts have found contracts to be procedurally

8  unconscionable when "**prepared by a party with excessive bargaining power and presented to the**

9  **other party on a 'take it or leave it' basis.**" *Openshaw v. FedEx Ground Package System, Inc.*, ---

10  F.Supp.2d ----, 2010 WL 3257479, *4 (C.D. Cal. Aug. 16, 2010).  See also *Pokorny v. Quixtar, Inc.*,

11  601 F.3d 987, 996 (9th Cir 2010) (arbitration provision procedurally unconscionable where drafted by

12  party with "superior bargaining position" and  "presented to Plaintiffs on a take-it-or-leave-it basis")

13       Moreover, Trump's arbitration provision was procedurally unconscionable because it failed

14  to advise prospective purchaser's that they would be waiving their right under Nevada law to bring

15  class actions.  As the Nevada Supreme Court held in  *D.R. Horton*,  an arbitration provision in a real

16  estate sales contract  is procedurally and substantively unconscionable where it is "inconspicuous,

17  one-sided and **failed to advise the real estate purchaser that significant rights under Nevada law**

18  **would be waived by agreeing to arbitration.**" 120 Nev. at 558-59.  Procedural unconsiconability

19  requires either  surprise or oppression.  Here, oppression existed because the parties had unequal

20  bargaining power and the contract was presented on a take it or leave it basis.  An arbitration provision

21  that includes a "stealth" waiver of the right to arbitrate as a class and of other important legal rights

22  also has the element of surprise under Nevada law.

23       The arbitration provision in the Purchase Agreement is also substantively unconscionable.[18]

24

25      [17] Unlike the individual consumers in this case the lead plaintiff in *KJH* was an investmment

26  limited partnership "comprised of self-described real estate investors who purchased one and, in
   some cases, multiple luxury condominiums-not as personal residences-but as speculative rental

27  properties." 2009 WL 1455992 at *2.

28      [18] Based on its finding that there was no procedural unconscioanbilty under the facts in that
   case, *KJH* never addressed the issue of substantive unconscionability. 2009 WL 1455992 at *2.

1   The Arbitrator's finding of a silent class action waiver in this case, combined with the numerous other

2   one-sided provisions in the arbitration provision which have been ruled unconscionable by the Nevada

3   Supreme Court compels a finding of procedural unconscionability.

4       The Arbitrator ignored the evidence of  the manner in which the Purchase Agreement was

5   negotiated and the one-sided substantive terms of the arbitration provision and erroneously ruled that

6   unconscionability analysis did not apply because the purchasers were real estate purchasers rather than

7   consumers.  That ruling is directly contrary to *D.R. Horton*, which held that under Nevada law

8   unconscionability was not limited to consumer contracts and that  the real estate purchase contract in

9   that case was both procedurally and substantively unconscionable.  120 Nev. at  558-59, See also

10  *Burch v. Second Judicial Dist. Court*, 118 Nev. 438 (2002);  *Nagrampa v. MailCoups, Inc.*, 469 F.3d

11  1257, 1283 (9th Cir. 2006) ("the sophistication of a party, alone, cannot defeat a procedural

12  unconscionability claim.")

13      Both California and the Ninth Circuit have refused to enforce arbitration provisions with class

14  action waivers. *See e.g., Discover Bank v. Superior Court*, 113 P.3d 1100, 1110 (Cal.2005); *Omstead

15  v. Dell, Inc.*, 594 F.3d 1081 (9th Cir. 2010) ("the class action waiver renders the entire arbitration

16  provision unenforceable"); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1180 (9th Cir.2003); *Ting

17  v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003); *Del Rio v. CreditAnswers, LLC*, 2010 WL 2196587,

18  *7 (S.D. Call. 2010) ("the class action waiver in the Agreement's arbitration provision is

19  unconscionable under California law."). Most recently, after *Stolt- Nielsen* was decided,  *Fisher v.

20  DCH Temecula Imports LLC*, 187 Cal.App.4th 601 (2010) held that a class action waiver in an

21  arbitration provision was unconscionable as applied to claims under  California's CLRA consumer

22  protection statute, which included a non-waiver provision like the Nevada statutes at issue in this case.

23      While no Nevada court has squarely addressed the issue, Nevada follows California and Ninth

24  Circuit law in determining whether arbitration provisions are unconscionable. *See  D.R. Horton*, 120

25  Nev. at 554. Causing purchasers to unwittingly waive their right to bring a class action is even more

26  insidious and unconscionable than an express class action waiver. As the South Carolina Supreme

27  Court observed in *Bazzle*:

28      **"[W]e ... hold that class-wide arbitration may be ordered when the arbitration**

1  **agreement is silent if it would serve efficiency and equity, and would not result in prejudice. If we enforced a mandatory, adhesive arbitration clause, but prohibited class actions in arbitration where the agreement is silent, the drafting party could effectively prevent class actions against it without having to say it was doing so in the agreement.**"

4  *Bazzle v. Green Tree Financial Corp.*, 569 S.E.2d 349, 360 (S.C. 2002) quoted in *Stolt-Nielsen*, 103
5  S. Ct. at 1771.

6      The silent class action waiver found by the Arbitrator is transparently one-sided because Trump
7  would never have occasion to bring a class action against the purchasers.  Trump had overwhelmingly
8  superior bargaining power, presented the contract to purchasers on an adhesive take-it-or-leave it basis.
9  Moreover, denial of class arbitration would make these claims economically unfeasible to arbitrate on
10  an individual basis. This silent waiver together with the other one-sided provisions of the Purchase
11  Agreements and failure to put purchasers on notice that they are waiving important rights clearly
12  compel a finding of unconscionability under Nevada law.

14      A.     **Trump's Arbitration Provision is Unconscionable Because It Fails To Warn Purchasers that They Are Waiving Important Rights Under Nevada Law**

16      **An "arbitration clause must at least be conspicuous and clearly put a purchaser on notice
17  that he or she is waiving important rights under Nevada law."** *D.R. Horton*,  120 Nev. at 557.
18  Here, the arbitration provision does not comply with the test set forth in *D.R. Horton* and Ninth Circuit
19  authority as the arbitration provision fails to advise Plaintiffs that they are waiving not only their right
20  to bring a class action but also their singular right to attorneys fees under Nevada Revised Statutes
21  §41.600 and §90.660 without any reciprocal right thereto to Trump, and granting a right to attorneys
22  fees that Trump does not otherwise have.  The provision does not inform Plaintiffs that they were
23  waiving their rights under the Nevada Securities Act and Consumer Fraud statute to have a singular
24  right to recover attorneys fees and be without potential liability for Trump's legal fees, which rights
25  are intended to encourage victims of fraud and purchasers of unregistered securities to bring claims
26  and to avoid the "chilling" effect on the ability to bring statutory claims, as discussed in *Ingle, supra,*
27  328 F.3d at 1178.

28      Plaintiffs also have the statutory right under state and federal law for Trump to bear the burden

of proof as to any claim that the investment was exempt from securities regulations. N.R.S. § 90.660. Again, Trump's arbitration provision waives this right and shifts this burden of proof without any explanation or disclosure.   Moreover, Plaintiffs have a constitutional right to a trial by jury.   The provision also fails to expressly disclose the waiver of trial by jury.   Although there is a provision for arbitration and an arbitrator, there is again no explanation or express waiver of Plaintiffs' constitutional right to a jury trial.   Finally, the provision also fails to disclose the substantial cost of the arbitration that Plaintiffs would have to even have to pay a hearing on the merits.   Again, these undisclosed costs would not be incurred in a court proceeding.

As a result, the Trump arbitration provision results in surprise and oppression because the provision provides no notice of important statutory and constitutional rights being waived by the provision which one-sidedly favors Trump.

### B.   The Arbitration Provision Is Procedurally Unconscionable Because the Arbitration Provision Was Inconspicuously Buried as a Subsection in the "Miscellaneous" Section on Page 13 of a 21-page Contract

The arbitration provision is also procedurally unconscionable under  because the provision is not conspicuous.  The arbitration provision is hidden as much as possible in the context of this contract. The text of the arbitration provision is as conspicuous as possible in the same 10-point type as the rest of the contract and is not bolded, italicized or capitalized, although numerous other portions of the Purchase Agreement are in bold text and/or capitals. The arbitration provision is buried to the fullest extent possible on page 13 of the 21 page agreement as subsection 25.10 to section 25 entitled "miscellaneous" after subsections 25.8 and 25.9 entitled "pronouns" and "headings," respectively. Although several other portions of the Purchase Agreement require the investors' initials next to the provision, the arbitration provision does not.  and Plaintiffs could not have changed any terms of the provision.

In *D.R. Horton*, the Nevada Supreme Court held that an arbitration clause  was procedurally unconscionable where it was  "on the back page of a two-page contract and was difficult to read because it was set out in extremely small type..." 120 Nev. at 556.

Other than the fact that the paragraph headings relating to the arbitration provision

were in bold capital letters, just like every other heading in the contracts, nothing drew attention to the arbitration provision. To the contrary, although the termite and drainage provisions were capitalized throughout, the body of the arbitration clause was not capitalized. Instead, it was in an extremely small font. As in *Burch*, the arbitration provision was inconspicuous. Thus, even if an individual read the contract, there was nothing to draw the reader's attention to the importance of the arbitration provision. **This failure to highlight the arbitration agreement, together with the representations made by Horton's agent that these were standard provisions, are key features in the district court's finding of procedural unconscionability.**

*Id.*

Here, as in *D.R. Horton*, the arbitration provision, was in the same font type as the rest of the contract and is not bolded, capitalized, italicized or highlighted in any other fashion. Indeed, by way of example, other headings such as "BUDGETS" at section 27 are capitalized and are far more prominent. Here, as in *D.R. Horton*, the text of the arbitration provision was not bolded or capitalized, although other portions of the Purchase Ageement are in bold text and/or capitals, which make it more unlikely that the arbitration provision will be read.[19] Under *D. R Horton*, Trump's "failure to highlight the arbitration provision" is a key attribute of procedural unconscionability. The arbitration provision at issue in this case is plainly buried near the end of the contract as a subsection of the inconspicuous "miscellaneous" section after subsections entitled "pronouns" and "headings." Trump could not have buried the arbitration provision in the contract in a more inconspicuous place.

This case is indistinguishable from *Tandy Computer Leasing v. Terina's Pizza*, 105 Nev. 841, 843 (1989), where the Nevada Supreme Court held that an arbitration provision was procedurally unconscionable because the provision was "hidden in very fine print in a paragraph labeled 'miscellaneous,'" Here, as in *Tandy*, the arbitration provision here is in fine print (10 point) and placed in a paragraph labeled "miscellaneous" where consumers would be least likely to look for important material and the "clause is not even in bold print." As a result, the arbitration provision is most certainly procedurally unconscionable as a surprise provision buried as a subsection to the miscellaneous section of the Purchase Agreement.

---

[19] In fact the provision in *D.R. Horton* was less well hidden than the one here because there "the paragraph headings relating to the arbitration provision were in bold capital letters." 120 Nev. at 556.

C.     **The Arbitration Provision Is Substantively Unconscionable When Applied to Plaintiffs' Claims Because the Fee Shifting Provision Only Assists Trump**

Because Plaintiffs have the right to recover fees if they win but no liability for fees if they lose under the securities and consumer fraud statutes which are the basis for their claims, the arbitration fee shifting provision unfairly favor of Trump.  Trump created a chilling downside by requiring Plaintiffs to pay high arbitration fees and imposing the risk that Plaintiffs will also have to pay Trump's attorneys fees to prosecute statutory securities claims that Trump could not recover in Court. In contrast, Plaintiffs gain nothing from this fee provision because the law already provides for the Plaintiffs to recover their attorneys' fees on statutory claims.  N.R.S § 90.660 and § 41.600.

As *R & L Ltd. Investments, Inc. v. Cabot Inv. Properties, LLC*, --- F.Supp.2d ----, 2010 WL 2983028 (D.Ariz., July 27, 2010) recently held "**Because the arbitration clauses at issue here require the arbitrator to award attorneys' fees to Defendants if they prevail, effectively nullifying the statutory protection provided to investors provided by Arizona's Securities Act, the arbitration clauses are substantively unconscionable**." 2010 WL 2983028 at *7.

The Trump arbitration provision states:

> The prevailing party shall be reimbursed for all expenses of arbitration, including the arbitration fees and attorneys fees and costs.

Purchase Agreement § 25.10, lodged as Gerard Decl.  Exhibit 5.

Unlike the federal and Nevada securities and consumer statutes, Trump's contract would require each of the Plaintiffs to pay Trump's legal fees if they lose.[20]

To encourage victims of securities fraud to sue, the Nevada Legislature has expressly provided that only successful plaintiffs can recover attorneys fees and costs, and provides no reciprocal right for Defendants. N.R.S. §90.660.  Trump's arbitration cost shifting clause defies the unilateral right to fees and costs under the Nevada Securities Act and thus contravenes this Legislative intent and public policy.  Further, with respect to these Nevada Securities Act claims, the arbitration provision is one-

---

[20] The effect is one-sided because the arbitration fees clearly would not have any chilling effect on Trump's litigation tactics, since this amount is insignificant to Trump as merely another cost of doing business and under the securities statutes Trump already had to bear its own fees regardless of the outcome and also pay Plaintiffs fees if Plaintiffs prevailed.

1  sided because Plaintiffs are already entitled to their fees and costs, so the arbitration provision's fee

2  shifting only benefits Trump. The chilling effect of high arbitration fees, along with the risk of shifting

3  Defendants' legal fees, makes Trump's arbitration provision  one-sided and substantively

4  unconscionable for this reason as well. *Ingle,* 328 F.3d at 1175-6.

5          The Supreme Court of New Jersey recently addressed a similar cost shifting arbitration clause

6  and held that the clause was unconscionable and unenforceable in the context of claims under statutes

7  that provided for one-sided fee shifting. *Delta Funding Corp. v. Harris*, 912 A.2d 104, 112-13 (N.J.

8  2007). That holding is consistent with established Nevada and Ninth Circuit law condemning

9  arbitration provisions that impose financial barriers to enforcement of statutory claims such as this one.

10 *See e.g., Ingle, supra,* 328 F.3d at 1178 ("By itself, the fact that an employee could be held liable for

11 Circuit City's share of the arbitration costs should she fail to vindicate employment-related claims

12 renders this provision substantively unconscionable"); *Ting, supra,* 319 F.3d at 1151; *D.R. Horton,*

13 *supra,* 120 Nev. at 558 ("the existence of large arbitration costs could preclude a litigant . . . from

14 effectively vindicating her . . . rights in the arbitral forum").

15         Absent this one-sided fee shifting provision in favor of Trump, Plaintiffs would as a matter of

16 public policy be entitled to their fees as the prevailing party on their statutory Nevada Securities Act

17 and consumer fraud claims and Trump would not be so entitled. The one-sided fee expansion favoring

18 only Trump creates an unconscionable barrier and chilling effect to the Plaintiffs' prosecution of

19 statutory securities and fraud claims, in direct contravention of the legislative intent to provide the

20 victims of a scheme to sell unregistered securities and consumer fraud with a judicial forum without

21 the risk of having to pay the defendants' attorneys fees. See N.R.S § 90.660.

22

23         **D.     The Arbitration Provision Is Substantively Unconscionable Because the**
24                  **Prohibition on Punitive Damages Is Unconscionable as a Matter of Law**

25         Trump eliminated the punitive damage remedy, which denies Plaintiffs an important additional

26 remedy and is one-sided because Trump would never have a punitive damage claim against Plaintiffs.

27 *See Lowden v. T-Mobile, USA, Inc.*, 2006 WL 1009279, * 7 (W.D.Wash April 13, 2006); *aff'd ,*

28 *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213 (9th Cir. 2008).

1    Nevada Revised Statute 42.005 provides:

2    Except as otherwise provided in NRS 42.007, in an action for the breach of an
     obligation not arising from contract, where it is proven by clear and convincing
3    evidence that the defendant has been guilty of oppression, fraud or malice, express or
     implied, the plaintiff, in addition to the compensatory damages, may recover damages
4    for the sake of example and by way of punishing the defendant.

5    Punitive damages may be awarded on Plaintiffs' tort claims because they are based on the

6 common law obligation not to commit fraud, which is an "obligation not arising from the contract."

7 It is unconscionable to require waiver of the opportunity to seek punitive damages. *Siggelkow v.*

8 *Phoenix Ins. Co.,* 109 Nev. 42, 846 P.2d 303, 304 (Nev. 1993).

9    In *Siggelkow,* the Nevada Supreme Court held that punitive damages could not be awarded

10 against an insurer based on the wrongdoing of the insured. As the Nevada Supreme Court recognized,

11 allowing a defendant to transfer punitive damage liability to an insurer violated Nevada public policy

12 because that would frustrate deterrence and punishment which are the fundamental purpose of punitive

13 damages.

14    [I]n order to effectuate these purposes, the wrongdoer must bear the burden of paying
      the award: "It is incumbent upon the party whose conduct was so outrageous as to merit
15    punishment by means of punitive damages to bear the burden of paying the award.
      **Only then will the goal of punishment and deterrence be effectuated.**"
16

17 *Siggelkow,* 846 P.2d at 305 (quoting *New Hampshire Ins. Co. v. Gruhn,* 99 Nev. 771, 670 P.2d 941,

18 942 (Nev. 1983)). This legislative policy against allowing a wrongdoer to escape penalties for his

19 intentional torts is the same as the legislative policy in California that led the court in   *Stirlen v.*

20 *Supercuts, Inc.* 51 Cal.App.4th 1519, 1529–1530, 1552  (1997) to hold that requiring waiver of

21 punitive damages in an arbitration agreement is always unconscionable. As the Nevada Court

22 recognized in *Clark v. Lubritz,* 113 Nev 1089, 1096; 944 P.2d 861, 865 (1997), Nevada follows

23 California case law on the unconscionability of punitive damage waivers because "Nevada's statute

24 on punitive damages is a verbatim copy of the California punitive damages statute." *Id.*[21]

25 _____

26    [21] **Cases around the country have also held punitive damage waivers to be substantively
      unconscionable.** *Ingle, supra,* 328 F.3d at 1178 (an arbitration provision that limited punitive
27    damages to $5,000 was unconscionable because it improperly limited available statutory remedies);
      *Circuit City Stores v. Adams,* 279 F.3d 889, 894 (9th Cir. 2002) (same); *Lowden v. T-Mobile, USA,*
28    *Inc.,* 2006 WL 1009279, * 7, *aff'd,* 512 F.3d 1213 (9th Cir. 2008) ("while the damages limitations
      here are nominally mutual, the Court cannot imagine a scenario in which Defendant would ever seek

1    Accordingly, waiver of punitive damages is contrary to Nevada public policy and is

2    independently sufficient to require a finding of unconscionability.

3

4    **E.    The Arbitration Provision Is Substantively Unconscionable Because the Confidentiality Provision Is One-Sided and Only Favors Trump**

5

6    The Trump arbitration provision prohibits disclosure of any information about the arbitration

7    proceedings or the evidence therein. By keeping the arbitration proceedings secret, as compared to the

8    open and public court provisions, the arbitration provision evidences yet another aspect of substantive

9    unconscionability. **The Ninth Circuit has held that such confidentiality provisions lacked**

10   **mutuality and were substantively unconscionable:**

11   > Although facially neutral, confidentiality provisions usually favor companies over
     > individuals... ...We conclude, however, that if the company succeeds in imposing a gag

12   > order, plaintiffs are unable to mitigate the advantages inherent in being a repeat
     > player......**Thus, AT&T has placed itself in a far superior legal posture by ensuring**

13   > **that none of its potential opponents have access to precedent while, at the same**
     > **time, AT&T accumulates a wealth of knowledge on how to negotiate the terms of**

14   > **its own unilaterally crafted contract.** Further, the unavailability of arbitral decisions
     > may prevent potential plaintiffs from obtaining the information needed to build a case

15   > of intentional misconduct or unlawful discrimination against AT&T. For these reasons,
     > we hold that the district court did not err in finding the secrecy provision

16   > unconscionable.

17   *Ting*, 319 F.3d at 1151-2; see also *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1002 (9th Cir 2010); *Davis*

18   ─────────────────────────

19   punitive damages, under the CPA or otherwise, against its individual customers. Therefore, the
     limitations are one-sided in effect and substantively unconscionable"); *Alexander v. Anthony Int'l,*

20   *L.P.*, 341 F.3d 256, 267 (3rd Cir 2003); *Gelow v. Cent. Pac. Mortg. Corp.*, 560 F.Supp.2d 972, 981

21   (E.D. Cal.2008) ("In order for an arbitration agreement to be lawful, it must allow for all types of
     relief that a court could order."); *Knox v. Joe Gibson's Autoworld, Inc.*, 2008 WL 2077361, *3

22   (D.S.C. May 8, 2008) (holding that an arbitration provision that prohibited statutory remedies
     including punitive damages was unconscionable and unenforceable); *Gulledge v. Trinity Mission*

23   *Health & Rehab of Holly Springs, LLC*, 2007 WL 3102141, *2, n. 2 (D. Miss. October 22, 2007)

24   (any provision in an arbitration agreement "to entirely eliminate the possibility of punitive damages
     would be substantively unconscionable"); *Lucey v. FedEx Ground Package Sys.*, 2007 WL

25   3052997, * 22 (D.N.J. October 17, 2007) (provision prohibiting recovery of punitive damages and
     attorneys fees unconscionable limitations on remedies); *Stirlen v. Supercuts*, supra, 51 Cal. App. 4th

26   at 1529-30; *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 280 (W.Va. 2002) (the West Virginia

27   Supreme Court granted a writ to prohibit enforcement of an arbitration provision holding that a
     waiver of punitive damages was unconscionable as a matter of law); *Powertel v. Bexley,* 743 So.2d

28   570, 575 (Fla. App.1999) (holding an arbitration clause in a cellular service agreement
     unconscionable where such clause precluded punitive damages).

PLAINTIFFS' PETITION TO VACATE PARTIAL FINAL ARBITRATION AWARD

26

1   *v. O'Melveny & Myers*, 485 F.3d 1066, 1078 (9th Cir. 2007); *Bradberry v. T-Mobile USA*, 2007 WL

2   1241936, *4 (N.D.Cal. August 7, 2007); *Bragg v. Linden Research, Inc.*, 487 F.Supp.2d 593, 609

3   (E.D.Pa.2007) ("the confidentiality of the arbitration scheme that Linden imposed also supports a

4   finding that the arbitration clause is unconscionable."); *McCollum v. XCare.net, Inc.*, 212 F.Supp.2d

5   1142, 1148 (N.D.Cal. 2002).  Accordingly, the confidentiality provision in the Trump arbitration

6   provision further supports a finding of substantive unconscionability

7           Moreover, Plaintiffs' ability to share evidence is the lynch pin that levels the playing field and

8   prevents a defendant from succeeding in a divide-and-conquer-strategy. **Courts have rejected far**

9   **narrower confidentiality provisions that allowed sharing of evidence and only required that the**

10  **arbitration award be kept confidential.** See e.g., *Acorn v. Household Intern., Inc.*, 211 F.Supp.2d

11  1160, 1171 (N.D.Cal. 2002); *AT&T Mobility II v. Pestano*, 2008 WL 682523, *7 (N.D.Cal. March 7,

12  2008); *Luna v. Household Fin. Corp. IIII*, 236 F. Supp. 2d 1166, 1179 (W.D.Wash 2002).  Preventing

13  its adversaries from gaining information about the evidence and proceedings in other arbitrations gives

14  Trump a much greater advantage as a "repeat player" than simply keeping the arbitration award

15  confidential. See *Pokorny v. Quixtar Inc.*, 2008 WL 850358, at *16 (N.D.Cal. Mar 31, 2008).  This

16  provision is also extremely one-sided because the provision does not affect Trump which has no need

17  to share evidence.

18          As the District Court held in *Acorn* in ruling that the very narrow confidentiality provision in

19  that case was unconscionable:

20          The secrecy provisions of the arbitration agreements both affect the outcomes of
            individual arbitrations and clearly favor Defendants. **They do so by reinforcing the**
21          **advantages Defendants already possess as repeat participants in the arbitration**
            **process.** The advantages to repeat participants in the arbitration market are well known
22          and need not be recounted at length here.

23  211 F.Supp.2d 1160, 1171.

24          Accordingly, the confidentiality clause also renders Trump's arbitration provision substantively

25  unconscionable.

26

27

28

**F.    The Arbitration Provision Is Substantively Unconscionable Because the Discovery Restrictions to Two Depositions Each Is a One-Sided Provision and Only Favors Trump**

The Trump arbitration provision also unfairly limits discovery.   First, depositions are limited to (2) individuals.   Second, Plaintiffs must establish a "substantial need" to obtain further discovery and can only obtain discovery that is directly relevant to an issue in the case, which is widely divergent from the legal standard applicable to federal court actions under Fed. R. Civ. P., Rules 26(b) and 30. **Multi-level boiler room sales schemes such as this one, require numerous depositions to peel the layers of the onion, trace the wrongdoing to the executive level and establish corporate liability**. Discovery limitations provisions are one-sided and unfair particularly in complex cases like  this one where much discovery will be needed and the limitation prevents plaintiffs from proving their claims. *See Ontiveros v. DHL Express*, 164 Cal. App.4th 494, 512-13 (2008);  *Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 716-717 (2004).   **The restriction is not only debilitating to Plaintiffs' ability to prosecute their case but also completely one-sided since Trump  needs no more than two depositions for each individual arbitration.**

Adequate discovery is indispensable for the vindication of statutory claims.  *See Armendariz, supra*, 6 P.3d at 682-83; *Ontiveros*, supra, 164 Cal. App.4th at 512.  Similar restrictions on discovery have been consistently held by Courts to be unfair to consumers asserting statutory claims and therefore substantively unconscionable. See  *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 373, 387 (6th Cir. 2005) (arbitration clause was unconscionable for reasons including "the limited discovery available in the forum suggested structural bias in favor of the employer."); *Openshaw v. FedEx Ground Package System, Inc.*, *supra*,  2010 WL 3257479 at *6. *Ostroff v. Alterra Healthcare, Corp*, 433 F.Supp.2d 538, 545 (E.D.Pa. 2006); *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F.Supp.2d 985, 996 (S.D.Ind.2001) (arbitration provision voided in part because discovery only allowed one depositions as of right); *Hooters of America, Inc. v. Phillips*, 39 F.Supp.2d 582, 614 (D.S.C. 1998) (arbitration provision voided in part because of limits on discovery); *Booker v. Robert Half Int'l, Inc.*, 315 F.Supp.2d 94, 103 (D.D.C.2004); *Kinney v. United HealthCare Services, Inc.* 70 Cal.App.4th 1322, 1332 (1999) ("Given that [the defendant] is presumably in possession of the vast majority of evidence that would be relevant to employment-related claims against it, the limitations

1  on discovery, although equally applicable to both parties, work to curtail the employee's ability to

2  substantiate any claim against [the defendant]")

3      *Fitz, supra*, 118 Cal. App. 4th at 716-717, rejected the argument that the discovery restriction

4  was not unconscionable because Plaintiffs are free to ask the arbitrator for permission to take more

5  than two depositions and held that the discovery restriction was unconscionable despite the fact that

6  the arbitrator could order additional discovery:

7          **Granting the arbitrator discretion to determine whether additional discovery is
        necessary, as the ACT policy does, is an inadequate safety valve.**

8
   *Id.* at 717.
9
           **As *Fitz* concluded, the right to depose only two individuals does not provide plaintiff's**
10
   **with "sufficient opportunity to vindicate their statutory claims."** *Id.* at 718, f.n.2. Here, as in *Fitz*,
11
   the discovery limitations would deny Plaintiffs a sufficient opportunity to vindicate their statutory and
12
   common law claims and the fact that the arbitrator has the power to order additional discovery is "an
13
   inadequate safety valve." *Id.* As in *Fitz*, and the other decisions cited above, the unconscionability of
14
   arbitration discovery restrictions is an issue that must be decided by the trial court not the arbitrator
15
   and, as in *Fitz*, the restrictions here further compel a finding that the arbitration provision is
16
   unconscionable.
17

18

19     **G.    The Arbitration Provision Is Also Unconscionable Because The Shifting of the
           Burden of Proof Under Nevada Securities Laws Is One-Sided in Favor of Trump**
20
           The Trump arbitration provision also shifts the burden of proof differently than what is
21
   provided for under federal and Nevada securities laws and is therefore unconscionable for this
22
   additional reason as well.
23
           Under Nevada's Uniform Securities Act, the burden of proof on certain issues is placed upon
24
   the Defendant. N.R.S. § 90.690. Thus, under Nevada law, Defendant bears the burden of showing
25
   that the investments at issue are excepted from the Uniform Securities Act or are subject to an
26
   exemption. N.R.S. § 90.690(1). Similarly, under federal law, the burden of establishing an exception
27
   or exemption from securities registration under 15 U.S.C. §77e is on the person claiming the exception
28
   or exemption. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953) (Keeping in mind the broadly

1   remedial purposes of federal securities legislation, imposition of the burden of proof on an issuer who

2   would plead the exemption seems to us fair and reasonable.")

3          The arbitration provision, however, shifts the burden to Plaintiffs to show that the investments

4   in this case are securities which are not exempt or excepted from registration.  This one-sided shifting

5   of the burden of proof in favor of Trump is unfair and against public policy in this case given the

6   statutory claims which have been brought by Plaintiffs against Defendants herein.

7

8

9

10  **VI.      CONCLUSION**

11         For the foregoing reasons, Plaintiffs respectfully submit that the Partial Final Awards should

12  be vacated because the Arbitrator exceeded her authority and acted in manifest disregard of the

13  controlling law.

14

15         Respectfully submitted,

16  Dated: August 9, 2010                    GERARD & ASSOCIATES

17

18                                   By:      */s/ Robert B. Gerard*
                                             Robert B. Gerard

19
                                     Gerard & Associates
20                                   2840 South Jones Blvd.
                                     Building D, Unit 4
21                                   Las Vegas, Nevada  89146
                                     Telephone: (702) 251-0093
22                                   Facsimile:     (702) 251-0094

23                                   Kyle Nordrehaug, Esq.
                                     Blumenthal, Nordrehaug & Bhowmik
24                                   2255 Calle Clara
                                     La Jolla, California 92037
25                                   Telephone:    (858) 551-1223
                                     Facsimile:    (858) 551-1232
26
                                     Burton Wiand, Esq.
27                                   Florida State Bar #407690
                                     Wiand Guerra King
28                                   3000 Bay Port Drive
                                     Suite 600

PLAINTIFFS' PETITION TO VACATE PARTIAL FINAL ARBITRATION AWARD
30

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Tampa, FL 33607
Telephone:      (813) 347-5100
Facsimile:      (813) 347-5199

Jared H. Beck, Esq.
Florida State Bar #20695
Elizabeth Beck, Esq.
Florida State Bar #20697
BECK & LEE
Courthouse Plaza Building
28 West Flagler Street, Suite 555
Miami, Florida 33130
Telephone:      (305) 789-0072
Facsimile:      (786) 206-2447

***Attorneys For The Claimants***

1  Robert B. Gerard, Esq. (Nevada State Bar #005323)
   Ricardo R. Ehmann, Esq. (Nevada State Bar #010576)
2  GERARD & ASSOCIATES
   2840 South Jones Boulevard
3  Building D, Suite #4
   Las Vegas, Nevada 89146
4  Telephone:     (702) 251-0093
   Facsimile:     (702) 251-0094
5
   Kyle Nordrehaug, Esq. (California State Bar #205975)
6  BLUMENTHAL & NORDREHAUG
   2255 Calle Clara
7  La Jolla, California 92037
   Telephone:     (858) 551-1223
8  Facsimile:     (858) 551-1232
9  Attorneys for Plaintiffs (Additional Attorneys on Signature Page)
10
                    UNITED STATES DISTRICT COURT
11
                        DISTRICT OF NEVADA
12

13

14

15  WILLIAM SPRADLIN and SHIRLEY           )   CASE NO.: 2:08-cv-01428-KJD-RJJ)
    SPRADLIN; EMMA ODUCA; SALLY KIM; )
16  ELLIOT SPRUNG and DAVID SPRUNG;        )
17  TDF PROPERTIES, LLC; and KUNIKO        )   DECLARATION OF ROBERT B. GERARD
    ISHIDA; individually and on behalf of all  )   IN SUPPORT OF PLAINTIFFS' PETITION
18  persons similarly situated;             )   TO VACATE PARTIAL FINAL
                                           )   ARBITRATION AWARD
19                                         )
                  Plaintiffs,              )
20         vs.                             )   Hearing Date:
                                           )   Hearing Time:
21                                         )
                                           )   Before:     Hon. Kent J. Dawson
22  TRUMP RUFFIN TOWER I LLC, a Delaware)
23  Limited Liability Company; and DOES 1  )
    through 100, inclusive,                 )
24                                         )
                  Defendants.              )
25  _____)
26

27

28       DECLARATION OF ROBERT B. GERARD IN SUPPORT OF PLAINTIFFS' PETITION TO VACATE
                        PARTIAL FINAL ARBITRATION AWARD

1    I, Robert B. Gerard, declare as follows:

2    1.    I am one of the attorneys for plaintiffs in this matter.  I am submitting this

3    declaration in support of Plaintiff's Petition to Vacate Partial Final Arbitration Award.  The

4    following facts are within my own personal knowledge, and if called as a witness, I could

5    and would testify competently to the matters stated herein.

6    2.    Attached as Exhibit 1 hereto is a true and correct copy of the Arbitrator's Partial

7    Final Award on Claim Construction in this matter dated August 10, 2010.

8    3.    Attached as Exhibit 2 hereto is a true and correct copy of the Declaration of

9    William Spradlin that was previously filed with the Arbitrator.

10    4.    Attached as Exhibit 3 hereto is a true and correct copy of the Declaration of

11    Elliot Sprung that was previously filed with the Arbitrator.

12    5.    Attached as Exhibit 4 hereto is a true and correct copy of the Declaration of

13    David Sprung that was previously filed with the Arbitrator.

14    6.    Attached as Exhibit 5 hereto is a true and correct copy of the Trump International

15    Hotel and Tower Las Vegas Condominium Purchase and Sales Agreement

16    7.    Attached as Exhibit 6 hereto is a true and correct copy of Trump International

17    Hotel & Tower Las Vegas Condominium Hotel Rental Management Agreement

18

19    I declare under penalty of perjury under the laws of the State of Nevada and the laws of the

20    United States that the foregoing is true and correct.  Executed this 9th day of September, 2010 at Las

21    Vegas, Nevada.

22

23                            /s/ Robert B. Gerard
24                            Robert B. Gerard

25

26

27

28    DECLARATION OF ROBERT B. GERARD IN SUPPORT OF PLAINTIFFS' PETITION TO VACATE
      PARTIAL FINAL ARBITRATION AWARD

1

## CERTIFICATE OF SERVICE

2        Pursuant to Special Order #109, counsel of record registered for the CM/ECF system

3  have been served with the foregoing PLAINTIFFS' PETITION TO VACATE PARTIAL FINAL

4  ARBITRATION AWARD and DECLARATION OF ROBERT B. GERARD IN SUPPORT OF

5  PLAINTIFFS' PETITION TO VACATE PARTIAL FINAL ARBITRATION AWARD, by

6  electronic means:

7  Patrick G. Byrne, Esq.
   Alex L. Fugazzi, Esq.
8  Justin L. Carley, Esq.
   Snell & Wilmer, LLP
9  3883 Howard Hughes Parkway
   Suite 1100
10 Las Vegas, Nevada 89169

11

12                               /s/   Carissa Hampton
                            An Employee of GERARD & ASSOCIATES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28