# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

WILLIAM SPRADLIN, et al.,

     Plaintiffs,

v.

TRUMP RUFFIN TOWER I, LLC,

     Defendant.

Case No. 2:08-CV-01428-KJD-RJJ

**ORDER**

Currently before the Court is Plaintiffs' Petition to Vacate the Partial Final Arbitration Award (#25).  Defendant filed a Response (#26), to which Plaintiffs filed a Reply (#27).  Plaintiffs also filed a Notice of Supplemental Authority (#28) which the Court has also considered.

**I. Background**

The instant case arises from a dispute between William Spradlin and seven other individuals who purchased condominium-hotel room units at the Trump International Hotel and Tower in 2005 ("Plaintiffs") on the one hand and Trump Ruffin Tower I, LLC ("Trump Tower") on the other over the details of their purchase agreement ("the Agreement"), including whether the purchases were actually securities and whether Trump Tower's behavior violated laws governing such sales. Plaintiffs originally brought suit in Nevada state court on September 22, 2008, after which Trump Tower removed the suit to this Court on October 20, 2008.  In November of 2008 both parties agreed

1   to stay the case pending the outcome of a Nevada Supreme Court case addressing the validity of an

2   arbitration clause identical to the arbitration clause in the Agreement; on April 22, 2009 the Supreme

3   Court of Nevada found the arbitration clause to be valid and enforceable.  The parties then stipulated

4   to stay their case and arbitrate the matter.

5          Plaintiffs filed a class arbitration on April 9, 2010, but Trump Tower disagreed about whether

6   the requirements for class arbitration had been met.  The parties briefed and argued the matter before

7   the arbitrator, who issued a Partial Final Award on Clause Construction ("the Award") on August 10,

8   2010.  The Award included the determination that there was no agreement to classwide arbitration in

9   the Agreement; the arbitrator also declined to find that the arbitration clause in the Agreement was

10  unconscionable.  Plaintiffs then filed the present Petition to Vacate the Award on September 9, 2010.

11  **II. Legal Standard**

12         The Federal Arbitration Act governs federal court review of arbitration awards.  <u>Kyocera</u>

13  <u>Corp. v. Prudential-Bache T Servs.</u>, 341 F.3d 987 (9th Cir. 2003).  Section 10(a)(4) of the Act states

14  that a district court may "make an order vacating the award upon the application of any party to the

15  arbitration . . . where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).

16         In elaborating on this standard, Plaintiffs cite the Supreme Court's decision in <u>Stolt-Nielsen</u>,

17  a case that also involved federal court review of an arbitration order on the issue of class arbitration.

18  (Petition to Vacate p.5 (citing <u>Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.</u>, 130 S. Ct. 1758

19  (2010)).)  Plaintiffs begin their discussion appropriately with a reference to the language in 9 U.S.C.

20  § 10(a)(4); they go on, however, to characterize <u>Stolt-Nielsen</u> as holding that "when an arbitrator

21  ignores the parties' agreement, the arbitrator exceeds its power," a relatively low standard. (Petition

22  to Vacate p.5.)

23         On the contrary, <u>Stolt-Nielsen</u> makes it clear that the 9 U.S.C. § 10(a)(4) standard is a "high

24  hurdle" for the party petitioning the court to vacate an arbitration award:

25         It is not enough for petitioners to show that the panel committed an error--or even a
        serious error.  "It is only when [an] arbitrator strays from interpretation and
26      application of the agreement and effectively 'dispense[s] his own brand of industrial

justice' that his decision may be unenforceable." In that situation, an arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator "exceeded [his] powers," for the task of an arbitrator is to interpret and enforce a contract, not to make public policy. Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., 130 S. Ct. 1758, 1767 (2010) (citations omitted).

Thus, a court will only overturn an arbitration order when the mode of the arbitrator's decision was one of policy-making. When the arbitrator addresses the agreement at hand in the context of surrounding laws, even when the arbitrator appears to have done so erroneously, a court should not intercede to overturn the order. See, e.g., Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) ("if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision") (citations, quotation marks omitted).

The Ninth Circuit has also elaborated on the meaning of the 9 U.S.C. § 10(a)(4), holding that arbitrators' awards are subject to review "not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law.' Kyocera Corp. v. Prudential-Bache T Servs., 341 F.3d 987, 997 (9th Cir. 2003) (citations omitted). The Ninth Circuit has further explained the "manifest disregard" standard in this manner:

> [F]ederal courts of appeals have repeatedly held [that] "manifest disregard of the law" means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators recognized the applicable law and then ignored it. As such, mere allegations of error are insufficient. Moreover, to rise to the level of manifest disregard the governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable. Collins v. D.R. Horton, Inc., 505 F.3d 874, 879-880 (9th Cir. 2007) (citations, quotation marks omitted).

It is therefore not enough that the arbitrator has made an error in interpreting the agreement under the law. The error must lack a rational foundation, or the arbitrator must have recognized but obviously ignored clear, relevant legal principles.

///////

///////

///////

3

1    **III. Analysis**

2         Plaintiffs claim the arbitrator exceeded her power in a number of different ways by

3    "manifestly disregarding" the law.  None of these claims meet the high standard of review for

4    overturning an arbitration award, however.

5    **A. Class Arbitration**

6         Plaintiffs argue that the arbitrator erred in concluding the Agreement does not allow class

7    arbitration because the arbitrator's decision does not accord with the Nevada default rule on

8    consolidation of arbitration and the arbitrator's decision does not accord with the parties' intent and

9    expectations.  Plaintiffs conclude that the arbitrator's decision therefore exceeded her power.

10        **1. Nevada default rule**

11        Plaintiffs claim the arbitrator erred by not finding that the default rule under Nevada state law

12   requires class arbitration to be allowed when not specifically prohibited in an agreement.  Plaintiffs

13   read Stolt-Nielsen as holding that when an arbitration agreement is silent on the question of class

14   arbitration, an arbitrator should follow the state default rule for consolidation of arbitration.

15   Plaintiffs then argue that the Nevada default rule for consolidation of arbitration is that consolidation

16   may be ordered unless the agreement prohibits consolidation. (Petition to Vacate p.10 (citing N.R.S.

17   38.224).)  Plaintiffs therefore claim that the arbitrator erred in distinguishing class certification rules

18   from consolidation rules because such a ruling is contrary to Stolt-Nielsen.  Even if Plaintiffs were

19   correct on these points,[1] however, Plaintiffs' claims would not meet the standard of review necessary

20   _____

21       [1] And they are not.  For example, even without conducting as close an analysis of this issue as the arbitrator
     conducted below, it is clear to this Court that Plaintiffs' repeated claims that Stolt-Nielsen stands for the principle that the

22   "state law 'default rule' for consolidation of arbitration claims" should govern determinations about class arbitration are
     completely incorrect.  It may be true that the facts of Stolt-Nielsen involve arbitration claims that were consolidated, but

23   the Stolt-Nielsen Court does not rely on that fact or even mention it subsequent to the background exposition at the start
     of the opinion.  The Court's only other discussion of consolidation of arbitration claims in Stolt-Nielsen (as opposed to

24   class certification of arbitration claims) comes when the Court lists several items that the arbitration panel below
     considered but did not find persuasive, including "court cases denying consolidation of arbitrations."  The Court does not

25   state that the panel should have found these cases persuasive, nor does the Court mention these cases ever again.

         Furthermore, even if this fleeting mention of "court cases denying consolidation of arbitrations" were intended

26   to establish a legal principle to guide future rulings on class arbitration, as a logical matter the implied principle would be
     that where past courts have found that in a particular context arbitration agreements were not even amenable to

1   for this Court to overturn an arbitration award.  The arbitrator considered the same legal arguments

2   Plaintiffs are now putting forward, and the arbitrator referred to and analyzed the appropriate case

3   law (including Stolt-Nielsen) and statutes (including N.R.S. 38.224) in doing so.

4         **2. Parties' intent and expectations**

5         Plaintiffs go on to claim that the arbitrator's decision against class arbitration was also

6   incorrect because the arbitrator ignored undisputed evidence of the parties' intent and expectations.

7   They characterize Stolt-Nielsen as standing for the principle that an arbitration provision's silence

8   creates ambiguity, which should be resolved by looking to evidence regarding the intent of the

9   parties.  Plaintiffs then cite evidence such as their own declarations, Trump Tower's

10  contemporaneous actions, additional documents that were part of the same transaction as the

11  Agreement, the language of the Agreement itself, and contemporaneous awards by the AAA

12  allowing class arbitration in other cases.

13        However, the arbitrator considered every piece of evidence Plaintiffs cite and discussed them

14  all in the partial final award and analyzed them in light of her interpretation of Stolt-Nielsen and

15  other applicable case law.  Instead of ignoring the evidence or the law, as Plaintiffs claim, the

16  arbitrator based her reasoning and opinion on both.

17        Plaintiffs do not argue that the arbitrator was dispensing her own brand of industrial justice or

18  making public policy, or that the arbitrator's decision was completely irrational or completely

19  disregarded the clear, applicable principles of the law.[2]  Rather Plaintiffs argue that the arbitrator

20  committed errors in her legal analysis.  They are therefore essentially asking this Court to allow them

21

22  consolidation (such as in the maritime context of Stolt-Nielsen), it would be even more unlikely that parties intended to

23  agree to class arbitration where the agreement is silent on the matter.  Nowhere in Stolt-Nielsen is there any evidence for
    the proposition that state default rules that allow for consolidation of arbitration under certain circumstances should be

24  interpreted to require class arbitration in agreements that do not mention class arbitration.  Plaintiffs are not only wrong
    on this point, but if their repeated arguments to this effect had been accepted by the arbitrator, it would have been the

25  only aspect of the instant case in which the legal error exceeded the "manifest disregard of the law" standard.

26      [2]And insofar as Plaintiffs' claims could be construed to be making the latter argument, this Court finds that the
    arbitrator did not disregard any clear, applicable principles of law in her decision.

1   to re-litigate issues already presented to the arbitrator below merely because Plaintiffs disagree with

2   the outcome reached by the arbitrator.  This flies in the face of the letter of the FAA, which only

3   allows limited court review of arbitral awards, as well as the spirit of the FAA, which was enacted

4   "in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v.

5   Concepcion, 131 S. Ct. 1740 (2011).  Therefore, this Court cannot overturn the arbitrator's

6   determination regarding class arbitration.

7   **B. Unconscionability**

8       Plaintiffs also argue that the arbitrator exceeded her authority in ruling that the contract was

9   not void as unconscionable.[3]  According to Plaintiffs, the arbitrator incorrectly relied on a non-

10  precedential opinion from a case with different facts, KJH & RDA Investor Group, LLC v. Eighth

11  Judicial Dist. Court of Nevada, 2009 WL 1455992 (Nev. 2009).  However, as the arbitrator noted, in

12  the arbitration proceeding both Plaintiffs and Trump Tower "refer[red] to and rel[ied] on [KJH], and

13  treat[ed] it as controlling."  (Petition to Vacate, Exhibit 1, p.6 n6.)  Plaintiffs go on to claim that the

14  arbitrator erred in applying KJH because she considered the facts of KJH instead of the facts of the

15  instant case.  Throughout the arbitrator's decision, however, she refers to the specific facts of this

16  case, comparing and contrasting them with the facts in KJH and ultimately basing her decision on

17  KJH only "to the extent that the record is the same, and the issues raised were the same there."

18  (Petition to Vacate, Exhibit 1, p.6.)

19      Plaintiffs also claim that the arbitration provision is unconscionable for a variety of reasons:

20  because it fails to warn purchasers that they are waiving important rights, because it is

21  inconspicuously buried in the contract, because it contains a prohibition on punitive damages, and

22

23          [3]After both parties had fully briefed this issue, the Nevada Supreme Court issued an opinion finding that a
24  provision in an arbitration agreement that disallows any form of class action makes the agreement unconscionable.
    Picardi v. Eighth Judicial Dist. Court of Nev., --- P.3d ----, 127 Nev. Adv. Op. 9, 2011 Nev. LEXIS 11 (Mar. 31, 2011).
    Shortly thereafter, however, the U.S. Supreme Court issued an opinion finding that a more limited rule against arbitration
25  provisions that disallow class actions in adhesive contracts set forth in the California Supreme Court's Discover Bank
    decision was pre-empted by the FAA.  AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (April 27, 2011).  Since this
26  issue was not raised or addressed by the parties in this case, however, this Court will not consider it.

1   because its provisions on fee-shifting, confidentiality, discovery, and burden of proof are all one-

2   sided.  As before, however, the arbitrator considered these factors in her decision.  Rather than

3   "ignoring" the evidence, as Plaintiffs claim, the arbitrator took notice of each piece of evidence and

4   accorded it weight in reaching her decision.  For example, the arbitrator considered the argument that

5   the arbitration provision was inconspicuously buried; however, she rejected it on the grounds that the

6   Nevada Supreme Court had already found that an identical arbitration provision in <u>KJH</u> was "not

7   inconspicuous and that the plaintiffs [in <u>KJH</u>] must have read and understood them, since they

8   separately initialed each page."  (Petition to Vacate, Exhibit 1, p.7.)

9       In each such instance this Court finds the arbitrator's reasoning far exceeds the minimum

10  requirements of the "manifest disregard of the law" standard.  Plaintiffs again fail to identify any

11  aspect of the arbitrator's decision that in which she has "exceeded [her] powers" under the standards

12  set forth by the Ninth Circuit and the Supreme Court, and this Court therefore declines to allow

13  Plaintiffs to relitigate this issue before this Court.

14  **IV. Conclusion**

15      Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Petition to Vacate Partial Final

16  Arbitration Award (#25) is **DENIED**.

17      DATED this 6TH day of June 2011.

18

19

20                                        _____
                                          Kent J. Dawson
21                                        United States District Judge

22

23

24

25

26

7